### In re the MARRIAGE OF Lorena Dodd WILLIAMS and Elmer Williams.

Upon the Petition of Lorena Dodd WILLIAMS, Petitioner,

and Concerning Elmer WILLIAMS, Respondent.

No. 55181.

Supreme Court of Iowa.

June 29, 1972.

George W. Hinshaw of Pattie, Hinshaw & King, Marshalltown, and James P. Irish of Irish & Skinner, Altoona, for appellant.

Loyal S. Fairall, of Fairall & Fairall, Marshalltown, for appellee.

MASON, Judge.

Elmer Williams, respondent, appeals from decree entered in dissolution of marriage proceedings brought under the provisions of what is now chapter 598, The Code, 1971.

As pointed out in earlier opinions of this court, the Second Session of the Sixty-third General Assembly chapter 1266 repealed the Iowa divorce statutes and enacted a dissolution of marriage procedure which became effective July 1, 1970. The revised statute makes the breakdown of the marriage the sole basis for termination of the marital relationship and eliminates the specific categories of fault grounds enumerated in section 598.8, The Code, 1966, as a standard for granting dissolution.

Respondent in written brief and argument assigned four propositions relied on for reversal. However, in oral argument before this court, counsel conceded his first and third propositions were moot and he did not pursue them as a basis for reversal. These propositions related to the court's appointment of an attorney to represent the minor children of the parties and respondent's contention the court erred in granting custody of their 11-year-old daughter to the petitioner.

Hence, only those propositions which deal with that portion of the decree ordering alimony and support payments by respondent remain for consideration. These assignments are closely related. Perhaps it will tend to a better understanding of the problem if respondent's fourth proposition is considered first.

This proposition is directed to the trial court's failure to amend and enlarge its findings and to modify the decree accordingly. After entry of the decree of dissolution, defendant filed motion asking the court to include in its findings a determination of whether petitioner had committed acts of adultery while married to respondent, had been dating a named individual during this period and had written and received letters from the person with whom she was inferentially accused of committing adultery. The motion also covered the question of petitioner's impeachment.

The trial court denied the motion on the basis that if it were to comply with the request, it would be necessary in fairness to the petitioner to also enlarge the findings to detail misconduct on respondent's part and any testimony by respondent deemed by the court to be untrue. In its order the court made this statement:

"The court did determine that fault lay with both parties, although perhaps more heavily upon the petitioner than upon the respondent and did accord fault some consideration in its determination of * * *, support and alimony, and property division."

In his second assignment respondent contends the property settlement and alimony and support payments are not equita-

ble since the award does not take into account petitioner's fault for the marriage breakdown. In this connection respondent argues that although chapter 598, The Code, 1971, would seem, in effect, to remove the element of fault as a basis for dissolution of the marriage, nothing in the statute removes from the court's consideration the conduct of the spouses and particularly that of the guilty party as a criterion in determining the equitable disposition of property.

I. In support of his position respondent relies on Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968), which was decided at a time divorces were based on the fault grounds enumerated in section 598.8, The Code, 1966. The opinion sets forth several factors as a suggested aid to trial courts in adjusting the rights and obligations of the parties upon judicial termination of the marriage relationship. Loc. cit. 163 N.W. 2d at 405. Before listing the factors to be evaluated, the court gave this caveat:

"This court has also repeatedly taken the position that in resolving the troublesome problem inherent in awarding alimony and effecting a distribution of property rights, *many factors* must be considered. See Gerk v. Gerk, Iowa, 158 N.W.2d 656, and citations.

"Use of the following general formula may be helpful in arriving at an equitable determination of financial or property rights and obligations of the parties to a divorce action, though each element is not always present or important." (emphasis supplied)

The court then proceeds to set forth five premarital criteria and ten postmarital criteria which will not be repeated here.

Fault was never the sole criterion for an award or property settlement or an allowance of alimony or support under our previous statute. True, it did enter into the determination along with other factors.

The issue presented by this appeal is what, if any, consideration fault of the spouses is to be given in awarding property settlement, alimony or support payments under the revised statute.

This is a matter of first impression for this court. The courts of other jurisdictions which have adopted no-fault divorce statutes have not considered the precise problem so far as our research discloses.

Section 598.14, The Code, 1966, provided:

"Alimony—custody of children—changes. When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be *right*.

"Subsequent changes may be made by it in these respects when circumstances render them expedient." (emphasis supplied)

The above section was repealed by chapter 1266 and section 598.21, The Code, 1971, was enacted in lieu thereof. It provides:

"Alimony—custody of children—changes. When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and maintenance of the parties as shall be *justified*.

"Subsequent changes may be made by the court in these respects when circumstances render them expedient." (emphasis supplied)

The only significant change made by the revision is substitution of the word "justified" for the word "right."

This language in section 598.17, The Code, 1971, is new:

"Dissolution of marriage—evidence. A decree dissolving the marriage may be entered when the court is satisfied from the evidence presented that there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved.

"The court shall, based upon competent and relevant evidence, in such decree provide for the division of the assets of the parties and reasonable support or maintenance of any dependent children or either spouse.

"No marriage dissolution granted due to the mental illness of one of the spouses shall relieve the other spouse of any obligation imposed by law as a result of the marriage for the support of the mentally ill spouse, and the court may make an order for such support."

Originally, the Divorce Laws Study Committee of Iowa in its report said that all evidence should be permitted in determining marital breakdown. The committee specifically mentioned certain kinds of evidence which were to be included in the scope of review: "1. Commission of adultery; 2. Willful desertion without reasonable cause for a period of two years; 3. Conviction of a felony after the marriage; 4. Chronic alcoholism; 5. Inhuman treatment affecting physical or mental well-being; 6. Incurable mental illness for a continuous period of three years immediately preceding the filing of the action, requiring confinement to an institution, home, or other facility and based upon the testimony of a qualified member of the medical profession that such spouse is incurably mentally ill; 7. Pregnancy of the wife at the time of the marriage, unknown by the husband, by a person other than the husband; 8. That the spouses have voluntarily lived entirely separate for three years next preceding the commencement of the action; and 9. The existence of an illegitimate child or children of one of the spouses, then living, which was unknown to the other spouse at the time of the marriage." Peters, Iowa Reform of Marriage Termination, 20 Drake L.Rev. 211, 215–216. The legislature, however, declined to follow its recommendation, electing, instead, to eliminate fault grounds. One writer suggests this be interpreted as an attempt to truly effectuate the purpose of the modern approach to divorce. Note, The No Fault Concept: Is This the Final Stage in the Evolution of Divorce?, 47 Notre Dame Law. 959, 969 (1972).

The first paragraph of section 598.17 makes breakdown of the marriage relationship the sole basis for termination of the marriage. The decree neither favors a petitioner nor is against a respondent. It acts only upon the status of the parties with relation to one another and consists in the granting of a judgment of dissolution of the marriage.

The second paragraph of this section directs that the division of assets of the parties, support or maintenance of either spouse be "based on competent and relevant evidence." It does not specifically prohibit the use of fault evidence. This might logically be interpreted as leaving the court some flexibility in individual cases in arriving at a proper adjustment of the rights and obligations of the parties upon judicial termination of the marriage.

The contents of the petition for dissolution of marriage are specifically set out in subparagraph 7 of section 598.5, The Code, 1971, in this manner:

"7. Allege that there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved."

The statute does not allow for the introduction of fault grounds in the petition.

Since the statute does not provide any specific guidelines, we turn to the efforts of legal writers in this field who have commented on similar no-fault dissolution statutes enacted in other jurisdictions as an aid in construing our statute. In addition to those already cited, we have examined: Clark, Divorce Policy and Divorce Reform, 42 Colo.L.Rev. 403 (1971); Tenney, Divorce Without Fault: The Next Step, 46 Neb.L.Rev. 24 (1967); Comment, 17 U. C.L.A.L.Rev. 1306 (1969–1970); Hayes, California Divorce Reform: Parting is

Sweeter Sorrow, 56 A.B.A.J. 660; Walker, Beyond Fault: An Examination of Patterns of Behavior in Response to Present Divorce Laws, 10 J.Fam.L. 267 (1971). An article, "The New California Divorce Law," 1969, by Walter T. Winter is of interest.

In addition to Iowa, California (Calif. Civ.Code sections 4500–40); Florida (Florida Statutes, Title 6, chapter 61); Idaho (chapter 6, Title 32, Idaho Code); Michigan (Michigan Comp.Laws Ann. section 552.6 (Supp.1971)); New Jersey (N.J. Rev.Stat. section 2A:34–2 (Supp.1972)) and West Virginia (W.Va.Code chapter 48), are among the states that have taken steps to revise their state laws governing divorce.

California was the first to make the move in 1969 followed by Iowa and Michigan in 1970. The Florida statute became effective July 1, 1971; Idaho in February 1971 and New Jersey, September 1971. The West Virginia statute was partially rewritten by the 1969 legislature.

These statutes vary from state to state with Michigan's being the most similar to the Iowa statute upon which it based the format of its law for the new dissolution of marriage procedure. They each present problems of interpretation and administration.

In criticizing the various enactments, authors of the legal periodicals referred to, supra, agree the most significant aspect of the new law is the attempt to eliminate the notion of fault or marital guilt from marital dissolution proceedings, and to substitute the marital-breakdown approach as a standard for granting dissolution. Generally, they maintain the marital-breakdown approach does away "with the hypocrisy of the fault approach, and, more importantly, it can be used to limit the bitterness and emotional stress associated with the fault system." 47 Notre Dame Law. at 970. The writer in another place in the cited note expresses the view that it was the hope of the legislatures this approach would eliminate the finger-pointing and thus reduce the bitterness and conflict.

■ These and other expressions found in the cited materials make it clear the overriding legislative purpose of the dissolution act is to remove fault-based standards for termination of marriages.

This court has frequently stated:

"The construction of any statute must be reasonable and must be sensibly and fairly made with a view of carrying out the obvious intention of the legislature enacting it." Janson v. Fulton, 162 N.W.2d 438, 442 (Iowa 1968). See also Isaacson v. Iowa State Tax Commission, 183 N.W.2d 693, 695 (Iowa 1971) and authorities cited in these opinions.

In light of this statement of law respondent's concession noted in his second proposition that chapter 598, The Code, 1971, "would seem, in effect, to remove the element of fault as a basis for dissolution of the marriage" might well be classified as an understatement.

■ Fault concept as a standard for granting dissolution of the marital relationship has been definitely eliminated by chapter 598, The Code, 1971.

However, respondent's argument that the conduct of the spouses and particularly that of the guilty party has not been removed as a criterion in determining the equitable disposition of property remains. He directs attention to the fourth factor of the post-marital criteria, "conduct of the spouses and particularly that of the guilty party", as listed in the Schantz opinion. The Schantz opinion was decided December 10, 1968. The author of a case comment on the Schantz opinion in 18 Drake L.Rev. 298, 305, makes this observation:

"The Iowa Supreme Court, by specifically listing the criteria to be considered in awarding alimony and property settlements, accomplished several tasks. It clarified and emphasized the law as to what factors

should and will be taken into consideration, utilizing a relatively simple 'check-list' that should be of greater benefit to the Bench and Bar than the previously used practice of lumping factors together into a few lengthy sentences. It has also reiterated in a striking fashion the controlling concepts of divorce awards of alimony and property in Iowa. Indeed, it may be more than co-incidence that the court utilized *Schantz* to emphasize the criteria prevailing in Iowa at a time when the legislature is giving consideration to reforming Iowa divorce laws, including discarding the 'fault' con-cept. The court, in taking such pains to reaffirm and reassert the several elements, appears to be saying that such changes as the elimination of the guilty party's con-duct from consideration must come from the legislative branch of the government. It is, then, clarifying the law not only for the Iowa lawyers but also for the legisla-tors of the state." (emphasis in the origi-nal)

The foregoing statement clearly sets forth the circumstances in which the Sec-ond Session of the Sixty-third General As-sembly considered repeal of the Iowa di-vorce statute and enactment of a dissolu-tion of marriage procedure, now chapter 598, The Code, 1971.

■ Unless the purpose of this enact-ment as determined from legislative history in the report of the Divorce Study Com-mittee is to be defeated, the "guilty party" concept must be discarded as a factor for consideration in providing an award or an allowance of alimony or support money.

The author of the comment in 17 U.C. L.A.L.Rev. at 1316–1317, expresses the be-lief, "Alimony, now called 'support,' will be determined by fairness rather than fault. Three factors must be taken into account: (a) the duration of the marriage, (b) the ability of the supported spouse to engage in gainful employment, and (c) the eco-nomic condition of the parties."

The writer of the note in 47 Notre Dame Law. at 972, appears convinced, "Al-

imony would be based upon need and the ability to pay, as determined by the eco-nomic status of the spouses at the time of marital termination. In conjunction with the ability to pay, the social status of the spouses would also be important, and per-haps even the social and economic status of the spouses prior to marriage should be considered. Evaluation of the length of time of the marriage would also be impor-tant. This is important in determining the relative need of the spouses as well as their ability to become self-supporting."

■ In fact, we find no dissent in the sources examined from the proposition that fault is not a factor to be considered in awarding property settlement or an allow-ance of alimony under the dissolution acts.

As pointed out, our determination that the legislative purpose in enacting chapter 1266 was to eliminate fault grounds as a standard for granting dissolution of a mar-riage was arrived at by taking into account the circumstances in which the legislature adopted chapter 1266 (18 Drake L.Rev. at 305) and the fact that portion of the Di-vorce Study Committee setting forth the kinds of evidence to be permitted in deter-mining marital breakdown was rejected in adopting the act (20 Drake L.Rev. at 215–216).

In order to carry out this obvious legis-lative intent and give effect to the object sought to be accomplished, we hold not only the "guilty party" concept must be eliminated but evidence of the conduct of the parties insofar as it tends to place fault for the marriage breakdown on either spouse must also be rejected as a factor in awarding property settlement or an allow-ance of alimony or support money. Usual-ly both spouses contribute to a breakdown of the marital relations which makes nec-essary an adjustment of their rights and obligations. In other words, evidence bearing on the fourth factor listed in the Schantz decision of postmarital criteria is not admissible on this issue.

■ Nothing in the statements quoted from the legal periodicals conflicts with other criteria set forth in Schantz v. Schantz, 163 N.W.2d at 405. Therefore, evidence relating to those remaining factors specified in that opinion is admissible for consideration if otherwise competent.

The foregoing determination is fatal to respondent's contention urged in support of his second proposition.

■ His fourth proposition is also without merit since fault of the spouses is to be given no consideration in awarding property settlement, alimony or support money. Respondent was not entitled to an amendment or enlargement of the court's findings in the respects urged in his motion.

■ Nevertheless, as noted, the trial court in overruling respondent's motion to amend and enlarge the court's findings stated fault had been given some consideration in its determination of alimony and property division. It was error to do so.

II. Having arrived at the conclusion that fault is not a factor to be considered in awarding property settlement or an allowance of alimony under chapter 598, The Code, 1971, we proceed to consider respondent's other contention that the award was otherwise inequitable and unjust since it leaves him in an almost impossible financial position in view of his mortgage indebtedness.

■ In equity it is our duty in a de novo review to examine the whole record and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the course of trial proceedings. In re Estate of Cory, 184 N.W.2d 693, 695 (Iowa 1971). While weight will be given to findings of trial court this court will not abdicate its function as triers de novo on appeal. Baker v. Starkey, 259 Iowa 480, 490, 144 N.W.2d 889, 895.

Petitioner and respondent were married February 25, 1950 and lived together as husband and wife until September 1970. Petitioner was 41 years of age at time of trial and respondent was 48 and a high school graduate. At the time of marriage the parties had few assets and only minor financial liabilities. During the course of the marriage virtually no contributions were received by them from outside sources. By virtue of hard work and conservative management of their finances, they had been able to accumulate a personal residence having a reasonable market value of $18,500 subject to a mortgage of $2659; an apartment house consisting of four two-bedroom first floor units having a reasonable market value of $33,500 subject to a mortgage of $24,017; a vacant lot valued at $1000; a Dodge automobile having a market value of $1875; a Chevrolet valued at $100; and 100 shares of National Mobile Home stock with a reasonable market value of $275. The parties had various other stocks totaling $1394, a bank account of $40 and respondent's carpenter tools and maintenance equipment valued at $750. Household goods and furnishings were valued at $1500. At time of trial they were indebted to a bank in the sum of $700.

The parties filed their written stipulation as to most of these values.

Hearing on the dissolution proceedings commenced May 17, 1971. Findings of fact and conclusions of law were filed June 10 with the decree of dissolution being filed June 15.

Our examination of the record discloses that petitioner has had virtually no job training and at time of trial was employed part time as a nurses' aide at a rate of $1.65 per hour. She estimated her earnings at approximately $25 per week and the cost of a babysitter for their ten-year-old daughter at $10. Respondent, a skilled journeyman carpenter, is capable of earn-

ing in excess of $4.00 per hour. In 1969 he earned approximately $9000 as a carpenter and approximately $8500 in 1970.

The gross income from the apartment house building was $100 per month per rented unit and there had been no problem in keeping three units occupied. Respondent was living in the fourth unit. In addition to payment of taxes and insurance premiums, monthly payments of $221 on principal and interest were required by the mortgage on this property. The insurance premiums were $150 per year and the taxes were just a few dollars less than $800, including the curb and gutter tax. Tenants in the apartments are furnished some utilities which run approximately $87 per month.

Taxes on the personal residence where petitioner resides are $404 and insurance, $47.50. Monthly payments on this mortgage were $84.84.

Although the health of both parties seems to be affected by their marital difficulties, there appear no health or mental problems which will interfere with their employment once the marital difficulties have been resolved. All indications are that their earnings will increase in the future.

The custody of Tamela Sue Williams, born January 25, 1961, was awarded to petitioner. As noted, her custody is not an issue on this appeal.

In its conclusions of law the trial court made detailed provisions for property settlement, alimony and support money.

Respondent was ordered to pay as alimony and for the support of their minor daughter the sum of $200 per month commencing June 15, 1971. These payments were to cease when Tamela reached the age of 18 or sooner died, married or became self-supporting. However, termination of such payments was not to take

place as long as Tamela was in full-time attendance at an accredited college, university or trade school, the period of such attendance not to exceed four years in any event and should be continuous following graduation from high school, vacation periods excepted.

Occupancy of the personal residence of the parties was awarded to petitioner with respondent being required to maintain the same, pay taxes, insurance premiums and principal and interest payments coming due on the mortgage on this residence.

Respondent was awarded the use and income from the apartment house building, being required to maintain the same, pay taxes, insurance premiums and mortgage payments.

Use of the properties by the parties was to terminate at the same time as payments of alimony and support money. Upon termination of the use and maintenance of the properties, the same were to be sold and after the payment of expenses, proceeds were to be divided 25 percent to petitioner and 75 percent to respondent.

Provision was made for the distribution of the net proceeds from the sale of these properties in the event either party should die prior to the termination date as fixed.

Petitioner was also awarded the vacant lot, Chevrolet automobile, household goods and furnishings and her personal belongings in the personal residence.

Respondent was awarded all other property including his tools and maintenance equipment. He was also required to pay the bank note, all expenses incurred by petitioner after September 1, 1971, remaining unpaid, costs of the action, $1000 toward the fee of petitioner's attorney and $100 as a fee for the attorney appointed to represent Tamela at the dissolution proceedings.

In summary, respondent is required under the terms of the court's decree to make

the following annual payments on both pieces of real estate until the termination date fixed therein: taxes $1204, insurance $197.50, and mortgage loans $3670. In addition there is an estimated utility bill of $1044. Taxes and insurance premiums are, of course, approximate figures. Added to this amount are alimony and support money payments of $2400 per year. He is thus required to pay $8515.50. To do this he has his income of approximately $9000 as a carpenter and rent of $3600 from the three apartment units assuming they remain occupied. Subtracting the payments required of him from this $12,600, respondent is left with the sum of $4084.50.

Respondent was given stocks and bonds of approximately $1675 and was required to pay a bank note of $700, attorney fees and court costs.

We appreciate that this does not leave respondent with much money. On the other hand, petitioner is furnished a residence for herself and daughter with the taxes and insurance being paid by respondent. She has $200 per month to maintain herself and child in addition to such income as she is able to produce. We also realize that under the terms of the decree the respondent cannot use the real estate during the period payments are required in any financial transactions. This court has said many times under the old divorce statute that there is seldom enough money to support two families in these situations. It appears in this case the same is true.

In our de novo review of this record we have eliminated any consideration of the fault concept and reached our determination on the basis of the criteria otherwise suggested in Schantz v. Schantz, 163 N. W.2d at 405 and conclude that respondent's contention the decree was inequitable and unjust as it related to the division of property and alimony and support payments is without merit under the circumstances presented by this record.

■ Except for the monthly .payments of alimony and support money the adjudi-

cation of the rights and obligations of the parties relating to the distribution of their property rights was just and fair.

As to those payments, we believe the decree should be modified by striking the provision requiring respondent to pay $200 per month as alimony and for the support of Tamela and that in lieu thereof the decree provide respondent make monthly payments of $100 as alimony with a further sum of $100 as support for Tamela. The decree insofar as it fixes the dates and conditions under which said payments are to continue shall remain unchanged.

III. Petitioner makes application for attorney fees for services rendered in this appeal. A certificate of her attorney showing the time involved for those services with money advanced for transcript and filing fees is set forth in petitioner's brief.

Counsel was allowed $1000 in addition to preliminary fees for services rendered in the trial court. It is apparent he has spent a great deal of time preparing this appeal.

■ Without in any way attempting to place a valuation on these services or what counsel should be paid, we simply determine what portion thereof should be paid by respondent. Petitioner should be allowed an additional $500 toward her attorney fees plus $133.90 for money advanced by him. Any amount due her attorneys above this additional allowance must be paid by petitioner. Judgment shall be entered in the trial court for such additional amount.

Costs shall be taxed against respondent.

Except as modified with respect to an allocation of a definite amount for alimony and support money and the additional allowances made herein, the decree is affirmed.

The matter is therefore—Affirmed and remanded with directions to modify.

All Justices concur, except UHLEN-HOPP, J., who dissents and MOORE, C. J., and REYNOLDSON, J., who join in this dissent.

UHLENHOPP, Justice (dissenting from division I but concurring in result).

The question is whether the parties' *conduct* with respect to each other—not merely "fault" for the marital breakdown—may be considered as one factor on the issue of fair and equitable alimony. ("Alimony" is used here in the broad sense to include both property division and monetary payments.)

The question may be brought into focus by two rather extreme but not rare examples, in which all factors are equal except the parties' conduct. In one, the husband in frequent fits of rage visits violent physical abuse on his blameless wife and children, eventually driving them from the home by his cruelty. In the other, the wife carries on with a paramour, frequently spending nights and weekends with him to the knowledge of the blameless husband and children. Is the court to be allowed to know these facts along with the other equities in the case in deciding upon a fair adjustment of the parties' financial rights and obligations? Or is the court to function in a vacuum so far as the parties' conduct is concerned? Compare facts in Caldwell v. Caldwell, 5 Wis.2d 146, 92 N.W.2d 356, with Manske v. Manske, 6 Wis. 2d 605, 95 N.W.2d 401.

The governing statute on alimony is general in terms and until recently read (Code, 1966, § 598.14):

When a *divorce* is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be *right*. (Italics added.)

In applying the statute, this court laid down a general guide on alimony—"a just, fair and equitable decision in the matter." Mitchell v. Mitchell, 193 Iowa 153, 161, 185 N.W. 62, 66. See also Riemenschneider v. Riemenschneider, 239 Iowa 617, 30 N.W.2d 769, supp. op. 32 N.W.2d 68 (such award as is fair); Kitchen v. Kitchen, 238 Iowa 582, 27 N.W.2d 901 (such amount as is right); Schorr v. Schorr, 206 Iowa 334, 220 N.W. 31 (an equitable apportionment).

Under that general guide, the court originally held that the "guilty" party could not have alimony. Fivecoat v. Fivecoat, 32 Iowa 198. The Fivecoat decision, however, equated marital misconduct to a tort and failed to consider that both parties are frequently blameworthy to some extent. Consequently, the court gravitated to the rule that the good and bad conduct of the parties, while not determinative, is one of the equities to be considered in arriving at a fair and just decision on alimony. Closz v. Closz, 184 Iowa 739, 169 N.W. 183; Mitvalsky v. Mitvalsky, 191 Iowa 8, 179 N.W. 520; Metzger v. Metzger, 224 Iowa 546, 278 N.W. 187; Brannen v. Brannen, 237 Iowa 188, 21 N.W.2d 459; Schantz v. Schantz, 163 N.W.2d 398 (Iowa); Morris v. Morris, 163 N.W.2d 549 (Iowa); Sherrard v. Sherrard, 175 N.W.2d 411 (Iowa); Conkling v. Conkling, 185 N.W.2d 777 (Iowa). The Iowa rule accords with the rule prevailing generally. 27A C.J.S. Divorce § 233(1) at 1037–1038, 1041 ("factors that may be taken into consideration in passing on alimony include . . . the conduct of the parties"), § 233(2) at 1044 ("conduct of the husband, as, for example, his cruelty, is a proper subject of inquiry in reaching a determination as to alimony and the amount to be allowed"), § 233(5) at 1054 ("conduct of the wife in so far as it bears on the marital difficulties is a circumstance that may be considered on the question of alimony"). With specific reference to fault, the prevailing view "rejects the position that alimony should be granted or denied on the basis of fault, but it also rejects the position that no consideration should be given to the issue of fault. Instead, it is based on the proposition that the parties' economic circumstances, rather than the issue of fault, should be the primary factor in determin-

ing whether to award any alimony, but that the issue of fault is one of several factors to be considered in determining how much alimony should be awarded." Annot. 1 A.L.R.3d 123, 142. See also Annot. 9 A.L.R.2d 1026, 1029.

Recently our legislature passed an act eliminating specified wrongs as a basis for divorce and authorizing marital dissolution if the marriage has irretrievably broken down. See Code, 1971, ch. 598. But the legislature retained § 598.14 previously quoted and changed only two words in it —the italicized ones. In the section, as renumbered 598.21, the word "divorce" was changed to "dissolution of marriage" and the word "right" was changed to "justified." See also § 598.17.

Certainly those word changes cannot be taken as a legislative enactment that the parties' conduct can no longer be considered on alimony. Had the legislature desired that result it would surely have dealt with the matter more definitely. It could easily have added the words, "but the parties' conduct toward each other shall not be considered on the issue of alimony." No provision of that kind appears.

Does the change in the basis for terminating marriage—from specified wrongs to irretrievable marital breakdown—constitute an enactment by implication that the parties' conduct shall no longer be considered on alimony?

Domestic relations cases ordinarily involve three main issues: dissolution of the marriage, child custody, and alimony. The legislature made a basic change in the law on the first issue, but it did not deal or purport to deal with the latter two.

The issue of custody is governed by what is in the best interest of the children. Utter v. Utter, 261 Iowa 683, 155 N.W.2d 419. The new act did not abolish that rule, nor did the act provide that the parties' conduct cannot be considered in determining the children's best interest.

Similarly, the issue of alimony is governed by what is just, fair, and equitable between the parties. The new act did not abolish that rule either, nor did it provide that the parties' conduct cannot be considered in determining what is a just, fair, and equitable adjustment of their financial affairs. The parties' conduct is just as relevant today as it was yesterday in resolving the custody and alimony issues. If evidence of that conduct also happens to disclose the cause of the marital breakdown, that is merely incidental.

Decreeing alimony is not as mechanical as fixing the award in other no-fault proceedings such as workmen's compensation, where the scale of payments is set by statute. In domestic relations cases, adjustment of the parties' financial rights and obligations is much more delicate and imprecise. The proceeding is in equity, and "the equities on both sides are to be considered. . . . A court of equity is a court of conscience; it seeks to do justice and equity between all parties; it seeks to strike a balance of convenience as between litigants; and *it looks at the whole situation.*" 30 C.J.S. Equity § 89 at 976, 978–979. (Italics added.)

Under the new act, the chancellor is searching as he was before for a fair, just, and equitable determination of the parties' financial rights and duties. In that search he still needs to be placed in the position of the parties and to know what they know. To do equity, he still needs to be allowed to see the full picture.

Finally, a rule against considering the parties' conduct will not work in practice. Thus in a case involving a custody contest, a chancellor hearing evidence that the wife is living with another man will in fact be unable to blot that evidence from his mind when he comes to the alimony issue. The law in books and the law in action will not be the same. In the absence of direction by the legislature, courts of equity should continue to be permitted, in word as well as in fact, to consider the parties' conduct in decreeing alimony. They should continue to weigh all the equities.

MOORE, C. J., and REYNOLDSON, J., join in this dissent.

REYNOLDSON, Justice (dissenting from division I but concurring in result).

I concur in the dissent filed by Justice UHLENHOPP. In so doing I am motivated not only by the reasons he assigns for dissenting but by the conviction the majority opinion will create confusion in trials of dissolution cases, now numbering approximately 21 per day.

It is likely some trial judges will construe this decision to mean no evidence which might tend to indicate fault for the marriage breakdown will be admissible in the consideration of property settlement and alimony. In short, it may be assumed evidence of bad conduct is not permitted.

On the other hand, it is clear that evidence of good conduct is invited. Majority retains the eighth and tenth postmarital criteria laid down in *Schantz*. Note the language in In re Harrington, Iowa, 199 N.W.2d 351, filed this date: "The fact she contributed to a happy marriage for ten years both by her labor and attention cannot be denied under this record."

No guidelines are established to assist the bench and bar in the typical situation in which the conduct of one party can only be viewed in the light reflected by the conduct of the other. Assume a husband who returns home each night, intoxicated, to beat and humiliate his wife. Assume she is a saintly person who as an extraordinary sacrifice in the preservation of the marital relationship (*Schantz* criterion four), endures this for years.

How can the wife's conduct be weighed without reference to the husband's conduct? If evidence of his conduct is going to be admissible for the limited purpose of showing a fact situation permitted to be disclosed by *Schantz* criteria eight or ten, we should say so now. If it is inadmissible for that limited purpose, the opinion should so state and admit criteria eight and ten of *Schantz* have also been emasculated.