In re the MARRIAGE OF Esther Pauline HARRINGTON and Earl Franklin Harrington.

Upon the Petition of Earl Franklin HARRINGTON, Appellee,

And Concerning,

Esther Pauline HARRINGTON, Appellant.

No. 54850.

Supreme Court of Iowa.

June 29, 1972.

**352**

I. Joel Pasternak, Des Moines, for appellant.

Mahoney, Jordan & Statton, Boone, for appellee.

MASON, Justice.

This is an appeal by Esther Pauline Harrington, respondent-wife, in dissolution of marriage proceedings challenging that portion of the decree relating to the award of property settlement made for her as insufficient. Petitioner, Earl Franklin Harrington, instituted the present action under chapter 1266 Acts of the Second Session of the Sixty-third General Assembly which repealed chapter 598, The Code, 1966, and enacted a new dissolution of marriage procedure effective July 1, 1970, which now appears as chapter 598, The Code, 1971.

Respondent and petitioner were married in June 1960. Both had been previously married and divorced. Before her marriage to petitioner, respondent was living with two of her three children, Candace age 6 and Eldon age 14, in her home in Polk City. Her third child was married and lived elsewhere. Respondent was employed by a local bank as a bookkeeper at a salary of $60 per week and was receiving $25 per week from her former husband as child support. The child support payments were discontinued in July 1960.

Mr. Harrington owned and lived on a 120-acre farm southwest of Boone. He farmed his own land, rented additional land, custom farmed other land and had an extensive livestock operation.

At the time of the marriage there was a five-year-old modern house, a machine shed, barn and crib on petitioner's farm. He had a full line of machinery, some livestock and an estimated net worth of $45,000. Other than a $7000 mortgage on the farm petitioner had no other debts.

After the marriage respondent and her two children moved to petitioner's farm. She had sold her home in Polk City receiving approximately $1300 after expenses. A part of this money was placed in a joint savings account with her husband in a Boone bank. She brought some furniture to the farm and had sold other pieces for approximately $300. This money was later used for farm expenses.

Before respondent married Harrington neither she nor Eldon had had any farmwork experience. However, under Mr. Harrington's tutoring both became good "hands." In a short time respondent was capably operating a tractor in the field while helping with fall plowing, pulling the hay baler, hauling beans from the field to the bin, ear corn from the field to the crib and pulling a disk to prepare the ground. She also helped sort hogs. In fact, it appears from the record she participated in every farm operation both on the home farm and the rented land except combining. Of course, this was in addition to keeping house, looking after Candace, preparing meals and washing two to three loads of clothes every night during harvest season. In the winter months Harrington did most of the chores and his wife took it easy.

Harrington described his wife as a "good worker." Mrs. Harrington pictures herself as a pretty healthy woman in 1960, big and strong physically. She said she continued her farm activities until 1968 or 1969 when she developed some physical problems including muscular spasms. This affected her "just like working all day and all night because she didn't rest at night, and had this muscular reaction all night." She also had some other surgical procedures. Because of utter fatigue she rested all winter but did help with some of the spring work in 1969.

Eldon worked right along with Harrington through the summer months until after graduation from high school. While he was going to school his school duties interfered somewhat with the amount of help he could give. But when available he did all kinds of field work and helped Harrington in the custom work done for neighbors. Harrington had given Eldon $5.00 a week for spending money and had purchased two or three old cars for him. When he helped neighbors bale hay, Eldon received 2 cents a bale paid directly to him. After graduating from high school,

he took one summer at a Chicago technical school at petitioner's expense. Later he worked away from home and then entered the service for two years. After discharge, he returned to the Harrington farm and again assisted Harrington in petitioner's farm operation.

Candace continued to live with her mother and the petitioner until her marriage in July 1970. After the child support payments stopped in July 1960, both children were supported through the efforts of petitioner and respondent.

Petition for dissolution was filed July 21, 1970. Trial commenced December 17 and continued through the 18th.

At time of trial petitioner was 55 years of age and respondent, 50. Respondent was not under social security during the marriage. Petitioner estimated his net worth at $90,800—farm equipment $47,000, the farm $30,000 with $13,000 in a joint account before respondent had withdrawn $10,000 therefrom June 17 and placed it in her own individual account in another bank. Mrs. Harrington kept an itemized account of expenditures made by her from this account commencing June 17 until time of trial. She expended $1333.60 including $500 retainer fee for her attorney.

Candace was no longer living with the parties and Eldon, now age 25, was attending Iowa State University commuting from the farm to Ames.

The foregoing is a fair narration of the factual background upon which the court was asked to make an adjustment of the rights and obligations of the parties upon a judicial termination of their marriage.

I. Respondent does not complain about the court's termination of the marital relationship. As noted, her attack is directed to the extent of the property settlement made for her, to the fact she was granted no periodic payments of alimony and to the allowance of attorney fees as inadequate.

Section 598.21, The Code, 1971, provides:

"Alimony—custody of children—changes. When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified.

"Subsequent changes may be made by the court in these respects when circumstances render them expedient."

We set out that portion of the court's decree determining the property settlement award for respondent:

"* * *

"2. That there is hereby awarded to the respondent as her sole and separate property the remaining balance of the $10,000 originally owned by the parties which was taken by the respondent in June of 1970.

"3. That the respondent have judgment against the petitioner in the sum of $5,000.00, and that no interest shall accrue on said sum in the event that the same is paid by the petitioner to the Clerk of this Court within thirty days of the filing of this Decree.

"4. That respondent is entitled to possession of that portion of the personal property by way of furniture, fixtures and appliances as hereinbefore set out.

"5. That the above and foregoing allocation of money and judgment shall be in lieu of any provision for support or future maintenance.

"6. That judgment for the costs of this proceeding, including a reasonable attorney's fee in the sum of $600.00 for respondent's attorney, shall be, and the same is, hereby rendered against the petitioner."

In its conclusions of law the court stated, "in attempting to arrive at an equitable property settlement, this Court has used the criteria set out in Schantz v. Schantz, 163 N.W.2d 398, [405] (Iowa 1968)." However, during the course of the trial the court had the occasion to make this statement, "The Court is going to sustain the objection with the comment that it is my understanding that the fault concept in dissolution cases is no longer present; that we are here primarily to officiate over the division of the assets, and I think we are getting into an awful lot of side issues."

■ This is in equity. Our review is de novo. Rule 334, Rules of Civil Procedure. As to this court's function in this type of review see Baker v. Starkey, 259 Iowa 480, 490, 144 N.W.2d 889, 895 and In re Estate of Cory, 184 N.W.2d 693, 695 (Iowa 1971).

Examination of the record before this court makes clear the trial court gave the fault concept no consideration in awarding property settlement.

Respondent maintains in argument all decisions under the prior divorce law (chapter 598, The Code, 1966) are just as applicable to cases arising under the present dissolution of marriage procedure, chapter 598, The Code, 1971, if not more so. Petitioner takes issue with this position. He maintains that the fault concept has been eliminated as a factor for consideration in awarding property settlement, alimony or support payments under chapter 598, The Code, 1971.

■ The question has been determined adversely to respondent's contention by In Re Williams, Iowa, 199 N.W.2d 339 (filed June 29, 1972), where this court held that not only the "guilty party" concept must be eliminated but evidence of the conduct of the parties insofar as it tends to place fault for the marriage breakdown on either spouse must also be rejected as a factor in awarding property settlement or an allowance of alimony or support money.

II. We examine the record in the light of that statement of law aided by those premarital and postmarital criteria set forth in Schantz v. Schantz, 163 N.W.2d at 405, eliminating, of course, from consideration evidence relating to the fourth factor set forth in that opinion of postmarital criteria.

The parties were married for ten years and are now 50 and 55 years old respectively. The net worth of petitioner has been increased, according to his own testimony, by $45,000. The $7000 mortgage and a note of $800 for petitioner's son have been paid.

Petitioner's income tax returns for the years 1961–1969 were received in evidence as bearing on his earning capacity. With the exception of 1965 when he had a net operating loss of $440.30, petitioner's gross income rose from $3800 in 1961 to $11,596 in 1967, $8539 in 1968 and $10,822 in 1969.

We are not told how many quarters of social security respondent had accumulated at the time of her marriage in 1960. In any event, under the present law she will be charged with five "zero" years when her eligibility for those benefits is determined. The record is silent as to her future earning capacity except at her age she has no specialized training and no source of income. The fact she contributed to a happy marriage for ten years both by her labor and attention cannot be denied under this record.

Under the court's decree respondent has a net worth of approximately $13,600 and a few items of furniture, most of which she had at the time of marriage. She contributed money from the sale of her home and furniture to the joint funds.

Petitioner on the other hand has a 15-year-old modern house well equipped with modern appliances and furnishings, a high earning capacity and a net worth of at least $75,000 according to his estimate.

Both are in good health and are accustomed to a high living standard.

■ We conclude that the third paragraph of the court's decree set out in division I, supra, should be modified by increasing the judgment awarded respondent in that portion of the decree to $13,000. All other terms and provisions of the decree are to remain in full force and effect.

III. Respondent's counsel was paid a retainer fee of $500 and the court awarded an additional $600 for services in the trial court. We find no reason to disagree with the court's determination under this record.

IV. Respondent makes application for additional fees for services rendered in this appeal.

■ We have examined the certificate filed by respondent's attorney setting out an itemized statement of time devoted to this appeal. We conclude respondent should have an additional allowance of $1250 toward her attorney fees for services rendered by him on this appeal. Judgment shall be entered in the trial court for such additional amount.

Except as modified by the increase in amount of the property settlement awarded respondent and the additional allowance made herein for attorney fees, the decree is affirmed.

The matter is therefore—Affirmed as modified and remanded with directions.

All Justices concur, except MOORE, C. J., and UHLENHOPP and REYNOLDSON, JJ., who concur specially, and McCORMICK, J., who takes no part.

UHLENHOPP, Justice (concurring).

I adhere to the views I expressed in dissent in In re Williams, 199 N.W.2d 339 (Iowa). But that decision is the law, and I therefore concur in the opinion in the present case.

MOORE, C. J., joins in this concurrence.

REYNOLDSON, Justice (concurring specially).

I adhere to the views expressed in the dissent of Justice UHLENHOPP and in my separate dissent in In re Williams, 199 N.W.2d 339 (Iowa 1972). Because that decision is now law, I concur in this case.