In re the MARRIAGE OF Verna Eleanor SMITH and Edward Lantz Smith.

Upon the Petition of Verna Eleanor SMITH, Petitioner, Cross-Respondent and Appellant,

and Concerning Edward Lantz SMITH, Respondent, Cross-Petitioner and Appellee.

No. 55490.

Supreme Court of Iowa.

May 23, 1973.

Smith, Dickey & Smith, Keokuk, for appellant.

Charles O. Frazier, Keokuk, for appellee.

Submitted to MOORE, C. J., and MASON, REES, UHLENHOPP and McCORMICK, JJ.

MOORE, Chief Justice.

Petitioner, wife, appeals from decree and judgment on respondent's cross-petition for dissolution of their marriage. She asserts the trial court erred in (1) granting the dissolution of marriage because respondent failed and refused to cooperate with the court's orders with respect to conciliation, (2) in granting a dissolution without first requiring respondent to submit to psychiatric counselling and (3) in fixing an inadequate amount for permanent alimony. We affirm.

Petitioner Verna and respondent Edward Smith were married on July 22, 1944. On October 8, 1969 she filed a petition for separate maintenance which was amended 22 days later to request a divorce. On July 15, 1970 the parties agreed to proceed under the newly enacted dissolution of marriage law, now Code chapter 598. On July 22, 1970 petitioner requested conciliation under the provisions of section 598.16. As relevant here, it provides:

"The court shall require such parties to undergo conciliation for a period of at least ninety days from the issuance of an order setting forth the conciliation procedure and the conciliator. Such conciliation procedures may include, but shall not be limited to, referrals to the domestic relations division of the court, if established, public or private marriage counselors, family service agencies, community mental health centers, physicians and clergymen. Conciliation may be waived by the court upon a showing of good cause; provided, however, that it shall not be waived if either party * * * objects."

The lower court, on the date of the application, appointed Reverend A. H. Bauch as conciliator and directed he meet with the parties at such times and places and at

such intervals as the clergyman deemed appropriate for the purpose of attempting to effect a reconciliation. He was further directed to report to the court at such times as he deemed appropriate.

Rev. Bauch held counselling sessions with the parties on July 31, August 7 and another soon thereafter. Rev. Bauch was on vacation for two weeks in August.

After the third session respondent filed a written request conciliation procedure be terminated. An evidentiary hearing was held thereon by the court on September 10, 1970. Respondent testified he was not interested in returning to his wife whom he had left on July 4 of the previous year, conciliation was gaining nothing and had developed into an examination of his morals to which he took exception. Petitioner stated she wanted very much to have the conciliation procedures continue as she believed they were very helpful. She expressed doubt that her husband was being honest with the conciliator. Rev. Bauch testified the conciliation sessions had been carried out in a sensible manner but to no avail. He found little hope up to that time and stated: "Perhaps a psychological evaluation would be beneficial."

Judge Cahill who had conducted the hearing ordered conciliation efforts be continued. His ruling included: "In view of the respondent's obvious unwillingness to participate in psychological evaluation, the Court is of the opinion that such an evaluation may make the conciliator's duties more difficult to accomplish."

Thereafter Rev. Bauch met with respondent on two more occasions, once for two hours with respondent alone and later with both parties. Conciliation efforts were unsuccessful primarily because respondent insisted he would never return to the home. Following an evidentiary hearing on respondent's second request for termination of conciliation the court on November 12, 1970 so ordered. The court expressed the opinion further conciliation would not be helpful primarily because of respondent's refusal to enter into any meaningful effort to work out the differences of the parties.

Trial, which commenced on March 5, 1971, was on respondent's cross-petition for dissolution. This was done by agreement of the parties as petitioner had renewed, by amendment, her prayer for a decree of separate maintenance. The evidence, which we need not detail here, was in sharp conflict. It included respondent's testimony he had left the Keokuk home of the parties' on July 4, 1969, he had not returned and had no such intentions.

The trial court's findings and conclusions included: "This Court is satisfied and finds from this record that further conciliation would be pointless and, further, that under these circumstances, the legitimate objects of matrimony no longer exist."

A decree of dissolution of marriage, division of property and allowance of $100 per month permanent alimony to petitioner was entered May 18, 1971.

I. Petitioner's first two assigned propositions for reversal will be considered together. Each raises questions of the extent conciliation efforts are required under Code section 598.16.

The legislative purpose of enacting the provision for conciliation, now section 598.16, was to foster viable marriage relationships and minimize the problem of hasty divorces. It is this court's obligation to construe the statute with the view of carrying out this obvious legislative purpose if fairly possible. In re Marriage of Penney, Iowa, 203 N.W.2d 380, 381, 382; In re Marriage of Boyd, Iowa, 200 N.W.2d 845, 851.

The extent a party is required to participate and cooperate in ordered conciliation proceedings was not reached in In re Marriage of Collins, Iowa, 200 N.W.2d 886, as the issue was raised for the first time on appeal. In this case we have the issue squarely presented for the first time. We hold the statute requires a good-faith rea-

sonable effort by both parties to conciliate and save the marriage if at all possible. Whether such an effort has been made necessarily depends on the particular facts in each case.

■ Respondent attended five conciliation effort sessions over a period of several months. To attend the last two he was required to travel 75 miles from his place of employment in Illinois. Admittedly his feelings and attitude regarding the marriage did not change. He had lost all interest in the marriage, to a great extent because he was keeping company with and intended to marry another woman. Recrimination does not bar dissolution of marriage. Section 598.18. See also 20 Drake L.Rev. at page 216.

■ Our de novo review leads us to the same conclusion as that apparently reached by the trial court that respondent had met the requirements of section 598.16 and further conciliation efforts would be of no avail.

Certainly a hasty dissolution had been avoided. The parties separated July 4, 1969. The trial was held March 5, 1971, a period of one year and eight months. The conciliator was appointed eight months prior to decree.

■ II. The trial court's appointment of a clergyman as conciliator was within the specific provisions of section 598.16. We find no abuse of the trial court's discretion in refusing to require respondent to submit to psychological evaluation.

Petitioner's first two assigned propositions establish no ground for reversal.

■ III. Petitioner's third assigned proposition is that the trial court erred in fixing permanent alimony at $100 instead of $175 per month. Section 598.21 provides that when a dissolution of marriage is decreed, the court may make such order in relation to children, property, parties and maintenance of the parties as shall be

justified. The applicable principles to be applied thereunder are thoroughly discussed in our recent cases of In re Marriage of Boyd, Iowa, 200 N.W.2d 845, 853; In re Marriage of Harrington, Iowa, 199 N.W.2d 351, 354 and In re Marriage of Williams, Iowa, 199 N.W.2d 339, 345, 346. Repetition here is unnecessary.

The parties were married on July 22, 1944 and separated July 4, 1969. In 1944 petitioner was working as a secretary and continued until a short time before the birth of the parties' only child in August 1948. When respondent became ill late in 1948 petitioner went to work again and later worked part time until the parties separated. Separation resulted in a serious nervous upset to petitioner. Her physician testified she was unable to work but perhaps within a year or two after the trial she would be able to do so.

Respondent was a member of the armed forces at time of marriage. He left military service in 1947 and was employed thereafter at various jobs until 1950 when he began working for the Hubinger Company in Keokuk where he remained until 1969. When he left he was being paid about $700 per month for running the mail room and training department. He had $20,817.52 in his employer's pension fund. At trial time the proceeds of that fund were being held in escrow. At trial time respondent was working in an Illinois factory with take-home pay of approximately $100 per week.

The trial court considered the amount to be allowed for alimony in relation to the division of assets and the order for payment of debts. Petitioner does not attack the trial court's order in regard thereto. However it has a direct bearing on the question of the adequacy of the permanent alimony allowance.

The trial court divided the debts and assets of the parties as follows:

The petitioner received the residence at 306 Belknap in Keokuk (valued at $7500),

3 of 6 cemetery lots, 12 shares of stock in Hubinger Company in her name which she inherited from her father, the $1000 savings account in the Keokuk Federal Savings and Loan which petitioner had placed in the name of her daughter, and in addition one-half of the funds from respondent's pension plan remaining in the escrow account with the clerk after her temporary support and income tax liens were subtracted. The pension fund started out at $20,817.52. Payments therefrom of $175 per month were made to petitioner from December 1969 until the decree on May 18, 1971. The tax lien was for $3679.70 plus accrued interest and penalty. An Iowa income tax lien of $515.36 was also first subtracted from the escrow funds. Thus, of the escrow account, $2975 had been given to petitioner as temporary support, and some $6000–6800 was given to her by the decree. The court also awarded petitioner alimony of $100 per month.

Respondent was given his 1968 Pontiac (bought for $2000 in 1969), the $1088 in the Credit Union account which he took when he left petitioner, any cash surrender value on his $1000 life insurance policy, 22 shares of Hubinger Company Stock in his name, an equal part of the pension fund (about $6000–6800) and 3 of 6 cemetery lots.

The court ordered respondent to pay the $4000 debt to the Keokuk Savings Bank (which went $1000 to pay off mortgage on 308 Belknap, $2000 to buy Pontiac, $1000 for respondent's expenses in leaving home). Respondent was also ordered to pay $350 for petitioner's attorney fees. Remaining debts were to be paid by the party in whose name the bills were owed.

Petitioner argues she should have been allowed $175 rather than $100 per month as alimony. Apparently her contention is in part based on the fact she had been receiving $175 during the pendency of the cause in the lower court. It must be noted however that payment was made out of the pension fund rather than from respondent's earnings.

From our review of the entire record we, like the trial court, conclude $100 per month is "justified." Petitioner's third assigned proposition is without merit.

The decree and judgment of the trial court is affirmed.

Affirmed.