In re the MARRIAGE of Elizabeth Ellen COLLINS and Wilbur Wright Collins.

Upon the Petition of Elizabeth Ellen COLLINS, Petitioner-Appellee, and Concerning Wilbur Wright COLLINS, Respondent-Appellant.

No. 55067.

Supreme Court of Iowa.

Sept. 19, 1972.

Peters, Campbell & Pearson, Council Bluffs, for respondent-appellant.

Noran L. Davis, Council Bluffs, for petitioner-appellee.

REES, Justice.

This is an appeal by respondent-husband, Wilbur Wright Collins, from a decree in a dissolution of marriage proceedings under the provisions of chapter 598, The Code, 1971. The action was instituted prior to the publication of the 1971 Code, and under the provisions of chapter 1266 of the Acts of the Second Session of the 63rd General Assembly.

At the time of trial in March, 1971, the petitioner and respondent were 31 and 41 years of age, respectively. They were married on July 1, 1958, at which time the petitioner was a student nurse, and respondent, during most of the time the parties lived together, was employed as a printer with an Omaha newspaper. Petitioner completed her nurse's training, and was registered in the states of Iowa and Nebraska, subsequent to the marriage. She practiced her profession of nursing for about a year and a half during the time the parties lived together.

Five children were born as the issue of the marriage, ranging in age at the date of trial from nine years to nineteen months. It was stipulated at the commencement of the trial that the parties had accumulated assets during their marriage equal in value to $120,000. All of the property was acquired by dint of respondent's frugality and industry, save and except for $2,000 which petitioner inherited from an uncle and which she invested in a trailer house which, together with a conventional dwelling, was being occupied by the parties as a home at the time of trial. The record indicates respondent had asset accumulations of approximately $45,000 prior to the marriage of the parties.

Mrs. Collins filed her petition on September 22, 1970, in which she recited the fact of the marriage of the parties, the birth of the children, and alleged there had been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony had been destroyed and that there remained no reasonable like-

lihood that the marriage could be preserved. She sought temporary support for herself and children, permanent alimony and child support, the custody of the children, a disposition of the property, and an allowance for attorney's fees and suit money. To her petition she appended a financial statement.

Respondent filed answer on September 28, 1970, in which he admitted the residence of the petitioner and of the respondent, the birth of the children as the issue of the marriage, but denied the marriage relationship had broken down to the extent that the legitimate objects of matrimony had been destroyed, or that there remained no reasonable likelihood the marriage could be preserved, and further denied that a dissolution of the marriage should be decreed or that any other relief should be granted petitioner.

On November 12, 1970 respondent filed an application for the appointment of a conciliator under the provisions of section 17, chapter 1266, Acts of the Second Session of the 63rd General Assembly (now section 598.16, The Code, 1971). On the same date, the court entered its order finding that a conciliator should be appointed and that the parties should undergo conciliation for a period of at least ninety days from the date of the order, unless part of that period shall be waived upon a showing of good cause thereafter. The court appointed Reverend Ralph Faisst, Minister of St. John's United Church of Christ, of Council Bluffs, as conciliator. The order provided "such conciliation shall continue for a period of not less than ninety days unless said conciliator at an earlier time determines that all reasonable efforts have been made to reach harmony between the parties without success." On December 9, 1970 Reverend Mr. Faisst directed a letter to the Honorable LeRoy Johnson, a judge of the 15th Judicial District, Council Bluffs, who had entered the order appointing the conciliator. In his report the Reverend Mr. Faisst informed the court that he had met with petitioner and respondent

individually, and that he found no hope or basis for reconciliation; that one party wanted to be free of the other, and that the Reverend Mr. Faisst doubted that either could be honestly reconciled at that time. He indicated he had spent three hours, collectively, with Mr. Collins, and two hours with the petitioner, over a period of three and one half weeks' time.

The cause proceeded to trial on March 4th and 5th, 1971, culminating in the entry of a decree which was filed March 9, 1971. The trial court found respondent had appeared more than 90 days prior to the entry of the decree, that the parties had undergone conciliation procedure in accordance with the prior order of the court, but that said procedure had not served any useful purpose, and the court found no reason to believe that the marriage could be reconciled. The court further found the evidence of the petitioner and the respondent showed there had been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony had been destroyed and that there remained no reasonable likelihood the marriage could be preserved.

The court therefore decreed a dissolution of the marriage of the parties, subject only to the limitation against remarriage in Iowa within a period of one year thereafter; ordered respondent to pay to petitioner within 120 days from the date of the decree the sum of $60,000. He awarded custody of all of the children of the parties to petitioner and provided respondent should have reasonable rights of visitation with them. The court further ordered respondent to pay into the office of the clerk of the district court at Council Bluffs $600 on March 15, 1971, and a like amount on the 15th day of each and every month to and including February 15, 1972, and thereafter the respondent should pay into said office the sum of $300 per month, such payments to continue until each child reached the age of 21 years or was otherwise emancipated, and ordered the reduction of said $300 monthly payments to the extent of

$60 per month upon each child's so attaining majority or becoming emancipated. Petitioner was further awarded the right to remain in the residence of the parties for a period of one year from the date of the decree, the household goods and a Rambler stationwagon, together with all property purchased from funds which petitioner inherited.

The court awarded to respondent all other property owned by the parties. No provision was made in the decree for the payment of attorney's fees for petitioner's attorney, or for the costs of the action.

In the first division of his brief and argument, respondent asserts, as a proposition upon which he relies for reversal, that the evidence was insufficient for the trial court to grant a decree of dissolution, contending: (a) plaintiff's evidence was insufficient to meet the evidentiary criteria necessary to the granting of a dissolution of marriage; (b) petitioner's failure to cooperate in efforts at reconciliation estop her right to a dissolution; and (c) there was insufficient corroboration of plaintiff's evidence to sustain a decree of dissolution.

In Division II of his brief and argument, respondent asserts in the alternative the division of property ordered by the trial court was grossly unjust, inequitable and unfair.

Petitioner, in her brief, meets directly all of the propositions urged by respondent for reversal, and contends the division of property was just, equitable and fair, except that respondent should have been ordered to pay petitioner's attorney's fee in the trial court, and that the court should not have ordered a reduction in child support after the first year's required payments of $600 per month. Petitioner also asks for an allowance of attorney's fees for services performed by her attorney in connection with this appeal.

I. Brief points 1 and 3 of Division I of respondent's brief and argument are so interrelated we shall deal with them together.

Petitioner testified at length and in detail concerning the very stormy marital history of the parties. We deem it unnecessary to refer to specifics; it is sufficient to say that a part of the difficulties which existed between the parties was in a sense philosophical. They could not agree as to family economics, and she testified at length concerning respondent's tight hold on the family purse strings. The fact the parties accumulated $120,000 in property during the period between their marriage in 1958 and the trial in March of 1971 [when it appears that at no time during that period had respondent enjoyed earnings in excess of $9200 per year], is indeed remarkable. It appears, however, that this accumulation of property was at the expense of his family who were forced to live in substandard housing and were obviously not provided with clothing and creature comforts commensurate with the family's financial position.

There is also in the record testimony of philosophical differences over religion; at the time of the marriage the parties were apparently communicants of the Methodist Church, but some time during the marriage relationship respondent became interested in the Unitarian denomination, insisting petitioner and the children follow his religious inclinations, which petitioner was reluctant to do.

More importantly, however, there was testimony of physical abuse of the children and of the petitioner herself on the part of respondent. Petitioner testified she had been beaten and slapped, had had her nose bloodied, and had bruises on her arms and had suffered a broken blood vessel in one hand. She in fact testified that since she had applied for the dissolution respondent had grabbed her by the hair and around her neck or by the jaw, and had stated to her that "one of us would be dead before this was over."

Petitioner further testified that the intimate marital relationship of the parties was strained, which was brought about by respondent's insistence on sexual contacts and practices of which she disapproved.

Respondent testified at length; he tacitly admitted the testimony of petitioner with respect to the sexual relationship of the parties; he did not deny the testimony of petitioner with respect to the physical abuse of either petitioner or the children; he attempted to justify his claimed penuriousness and tightness with the purse strings by contending he was seeking to accumulate an estate for the benefit of himself, his wife and their children.

We conclude the record was replete with evidence from which the court could find the marriage relationship of the parties had broken down beyond hope of reconciliation. We have said corroboration required may be supplied by direct or circumstantial evidence, the testimony of the other spouse, his or her elusiveness or failure to deny the evidence presented by plaintiff. Arnold v. Arnold, 257 Iowa 429, 435, 133 N.W.2d 53, 57; Erickson v. Erickson, 261 Iowa 264, 269, 154 N.W.2d 106, 110; Schantz v. Schantz (Iowa 1968), 163 N.W.2d 398, 403; Garrison v. Garrison (Iowa 1970), 179 N.W.2d 466; and see In re Marriage of Boyd, Iowa, 200 N.W.2d 845 (filed September, 1972).

The provision requiring the corroboration of the petitioner (section 598.10, The Code, 1971), in our new dissolution of marriage statute is in fact a reenactment of section 598.7, The Code, 1966, the only difference being that the word "divorce" has been supplanted by the words "dissolution of marriage".

The requirement for corroboration is almost repugnant to the concept of "no-fault" dissolution of marriage. California, in its revision of its marriage termination statute, and in going from a "fault" to a "no-fault" philosophy and concept, eliminated the necessity of corroboration of a petitioner. The section requiring corroboration is embraced, however, in our dissolution statute and we must proceed within its framework.

Corroborative evidence is required mainly to prevent collusion between the parties. Erickson v. Erickson, *supra,* 154 N.W.2d at 110. The criteria for dissolution now is a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and it would, therefore, appear collusion is no longer relevant to this criteria. In truth, if it were demonstrated the parties were in collusion to bring about a termination of the marriage relationship, it would further evidence the fact of the marriage breakdown.

We conclude that plaintiff's evidence met the evidentiary criteria essential to the granting of a dissolution of marriage and that the statutory requirement for corroboration was sustained.

II. In brief point 2 of Division I of respondent's brief and argument, he contends petitioner's failure to cooperate in efforts at conciliation estop her right to a dissolution.

The chronology of this case is significant in connection with this contention on the part of respondent. The petition was filed on September 22, 1970, and respondent's answer on September 28, 1970. On November 12 thereafter respondent filed his application for appointment of a conciliator, and the appointment of the Reverend Mr. Faisst was made by the court on the same date. The conciliator's report was dated December 9, 1970, 27 days from the date of the order appointing him.

Section 598.16 of the Code provides in pertinent part:

"The court shall require such parties to undergo conciliation for a period of at least ninety days from the issuance of an order setting forth the conciliation procedure and the conciliator. Such concili-

ation procedures may include, but shall not be limited to, referrals to the domestic relations division of the court, if established, public or private marriage counselors, family service agencies, community mental health centers, physicians and clergymen. Conciliation may be waived by the court upon a showing of good cause; provided, however, that it shall not be waived if either party * * * objects."

We note no objection to the now claimed refusal or failure of petitioner to cooperate in efforts at conciliation was raised in the trial court. Certainly, it was incumbent upon respondent to make his position known at trial level, and his contention in this regard cannot be considered here initially.

■ Factually, we do not feel the record evidences a failure on the part of petitioner to cooperate in efforts at conciliation. Both parties testified that during the time they lived together they had seen a marriage counselor on repeated occasions in connection with the difficulties they were then experiencing. Petitioner had also sought other help in an attempt to reconcile their differences, in the person of a Methodist minister, one Reverend Mr. Kitterman, and in fact, the parties had been in contact with Reverend Kitterman even since the application for dissolution of marriage was filed.

We should note further the decree was entered 90 days from and after the date of the appointment of the conciliator, and between six and seven months subsequent to the filing of the petition for dissolution.

We find no merit in respondent's contention in this regard.

■ III. We are not disposed to interfere with the decree of the trial court in ordering division of property in the re-

spects above recited. The parties were married July 1, 1958, and the decree of dissolution was filed on March 9, 1971. The parties lived together for over 11 years, accumulated considerable property, and five children were born as the issue of the marriage. The decree of the court directing payment to petitioner by respondent in the sum of $60,000 as a lump-sum settlement was justified by the record. The requirement for respondent to pay $600 a month for a period of one year, and $300 per month thereafter with declining obligations as each child attains majority or is otherwise emancipated, is also in our judgment reasonable and proper.

■ Trial court made no reference to the payment of attorney's fees for petitioner's attorney. It however saw fit to settle upon petitioner a substantial sum of money, and doubtless concluded she was adequately provided for and could pay her own attorney's fees. Costs of the action, however, should have been taxed to the respondent.

■ We have reviewed petitioner's application for allowance of attorney's fees for services performed in the Supreme Court. Her counsel has filed an application setting forth an itemization of time spent in studying and examining the transcript of the testimony in the trial court and settling the record on appeal with respondent's counsel, for performing all services in connection with the preparation of petitioner's brief and argument, and for oral argument in the Supreme Court and travel expense, aggregating in toto $1575. We feel this is reasonable, and petitioner's counsel should be awarded the sum of $1575 for services performed in connection with this appeal, and judgment should be entered against respondent for said amount.

Judgment shall be entered against the respondent by the trial court for the costs of the action, and for attorney's fees for serv-

ices rendered in connection with this appeal.

We find no reversible error, and affirm with instructions to enter judgment for costs and attorney's fees as above directed.

Affirmed.

All Justices concur.