In re the MARRIAGE of Beverly Morrow BOYD and Franklin James Boyd.

Upon the Petition of Franklin James BOYD, Appellee,

And Concerning Beverly Morrow BOYD, Appellant.

No. 54946.

Supreme Court of Iowa.

Sept. 19, 1972.

Hanson & Barron, Audubon, for appellant.

Dale D. Levis, Audubon, for appellee.

MASON, Justice.

Beverly Morrow Boyd, respondent-wife, appeals from decree entered in dissolution of marriage proceedings brought under the provisions of what is now chapter 598, The Code, 1971.

The Second Session of the Sixty-third General Assembly, chapter 1266, repealed chapter 598, The Code, 1966, which embodied the statutes prescribing procedure for divorces and annulments of marriages and enacted a new dissolution of marriage procedure, effective July 1, 1970, which now appears as chapter 598, The Code, 1971. The revised statute makes the breakdown of the marriage the sole basis for termination of the marital relationship and eliminates the specific categories of fault grounds enumerated in section 598.8, The Code, 1966, as a standard for granting dissolution. In re Marriage of Williams, 199 N.W.2d 339, (filed June 29, 1972).

All future references in this opinion to the Code will be to the 1971 Code unless specifically noted otherwise.

Petitioner, Franklin James Boyd, instituted the present proceedings July 6, 1970. July 9 respondent filed answer and application for conciliation. Section 598.16, The Code. That day the court entered an order on conciliation appointing an Omaha, Nebraska doctor of medicine and an Audubon, Iowa minister as conciliators "for the purpose of determining the possible avenues and any necessary treatment relative to the preservation of the marriage of the parties." November 18 the court entered an order appointing an attorney to represent the minor children of the parties. Section 598.12, The Code. After amendment to answer and the filing of the petitioner's financial statement, section 598.13, The Code, the matter proceeded to hearing December 8.

Both parties were 41 years of age at the time of trial. They were married May 28, 1950 and separated March 22, 1970. Three children were born as the issue of the marriage, Franklin James Boyd, Jr., born June 16, 1953; Kimela Sue Boyd, born May 3, 1954; and Scott Jay Boyd, born August 2, 1956. At time of trial the children were living with petitioner in a rented trailer house. Respondent remained in the family home.

Petitioner testified there had been a continuous conflict in the home since 1961 or 1962. Conditions remained about the same the last several months prior to his leaving the home. He stated the marriage was

completely broken down and there was no likelihood the marriage could be preserved.

Petitioner is employed by and serves on the board of directors of an Audubon bank receiving a gross salary of $1200 per month. In 1968 and 1969 he received one month's salary as a bonus. Since September 1965 he has been the sole owner of a ready-mix cement business realizing an average monthly income of $418.

The financial statement filed indicates petitioner has a net worth of $7040.63. The family home valued at $32,000 is subject to a mortgage of $26,386.37. Petitioner owns a cabin, boat and related items on Black Hawk Lake valued at $12,000 subject to a mortgage of $8580. The balance sheet for the ready-mix plant shows a net worth of minus $9306.42. The balance sheet also discloses a personal drawing account for the petitioner for the 11 months in 1970 of $14,311.66. He owns an automobile valued at $1950. Household furniture and furnishings accumulated by the parties are valued at $2000.

The mortgage encumbering the house required monthly payments of $200 in addition to taxes and insurance. These items plus utilities averaged $126 per month. The ready-mix business loan obligated petitioner to make monthly payments of $500; mortgage on the Lake View property called for monthly payments of $220.

In his financial statement petitioner estimated his monthly personal expenses at $504 plus a monthly deduction of $340 to cover income tax and social security payments.

Petitioner called Russell C. Herbert who had been acquainted with both parties for approximately 16 years as his corroborating witness. Section 598.10, The Code. The witness testified that all he knew about the matter was what petitioner had told him and from that he concluded there was no possibility of a reconciliation.

At the close of petitioner's evidence respondent moved for dismissal of proof.

She contended petitioner testified only to conclusions and there was no corroborating testimony. The court overruled the motion and on its own motion admitted exhibit 4, a letter to the court from the Audubon minister who had previously been appointed a conciliator. Respondent's only objection in the trial court was "that same simply stated a conclusion of the clergyman conciliator and as such constituted an usurpation of judicial function."

Respondent graduated from the University of Northern Iowa with a two-year teaching certificate and taught kindergarten for three years. She and her husband met while both were attending college. We are not told the extent of petitioner's education. She testified there had been marital troubles for some time. She had begged her husband to have marriage counseling at Mayo Clinic but he refused. She said her husband had also refused counseling with Doctor Aita, the Omaha psychiatrist.

Mrs. Boyd said her general health was fairly good. She had broken her back while in high school, has some physical problems and some physical limitations because of two spinal fusions. The Rochester doctor had ordered her not to bend or ever move furniture. Respondent does run a low-grade fever but adequate rest controls this and she is fairly free of pain as long as she follows the doctor's advice.

Respondent's assets consist of $151 in cash and a 1966 automobile supplied her by petitioner valued at $1500. She had earned a total of $59 as a seamstress in the three months preceding trial.

Inasmuch as respondent has not taught since 1952 she is not now qualified to teach and it would take at least 15 semester hours to get an emergency certificate and even then there would be little chance of employment with such a certificate.

In its decree filed December 21, 1970, the court found from the evidence there had been a breakdown of the marriage re-

lationship to the extent the legitimate objects of matrimony had been destroyed and there remained no reasonable likelihood the marriage could be preserved. Section 598.-17, The Code.

The court decreed dissolution of the marriage, awarded custody of Franklin James Boyd, Jr., to petitioner and custody of Kimela Sue and Scott Jay to the respondent. Each party was granted visitation rights at reasonable times and places. Petitioner was ordered to pay $90 per month as child support for each child commencing December 21, 1970 and monthly thereafter until each child attained the age of 21, married or became self supporting. In addition to the monthly payments petitioner was directed to pay all major medical expenses of the two younger children during the time he was required to pay child support for each.

Petitioner was further ordered to pay respondent $150 per month as alimony, the first payment to be made December 21, 1970 and subsequent payments on the 21st day of each month thereafter until respondent remarried.

The court awarded each party their own personal items of clothing, jewelry and personal effects. Respondent was awarded all furniture and appliances and household goods then located in the family home. She was also awarded a 1966 Ford automobile registered in her name.

The Lake View property, boat, hoist and related items were ordered sold and the net proceeds divided equally.

All other property was awarded to petitioner subject to encumbrances against the same.

Petitioner was ordered to pay $600 toward respondent's attorney's fees, the costs of the action including the fees allowed the conciliators and those of the attorney appointed to represent the minor children.

I. Respondent argues her first and second propositions relied on for reversal or modification in one division.

She first asserts the court erred in admitting into evidence exhibit 4. We set out the salutation and body of the letter:

"To the Presiding Judge:

"All during my several visits with the Boyds (many individual counseling sessions and twice together), it has become increasingly clear that only a marriage in a legal sense exists. There is no supporting marriage relationship existing now and I see no future chance towards any improvement in the relationship."

As previously stated, respondent's objection to the admissibility of this letter was limited to its "simply stating a conclusion of the clergyman and as such constituted an usurpation of judicial function."

■■ The aspect of respondent's objection asserting the exhibit was inadmissible as a conclusion of the minister presents nothing for review. In Bengford v. Carlem Corporation, 156 N.W.2d 855, 865, (Iowa 1968), this court said that an objection that evidence offered calls for an opinion conclusion of the witness is essentially worthless standing alone as it fails to call attention of the trial court to any specific ground for objection in that opinion; conclusion evidence is not inadmissible solely on that ground and some specific reason for its exclusion must be stated.

Although the exhibit might have been inadmissible if challenged by proper objection, the objection made under the record does not fall within that category. The contention stressed in respondent's argument in this court in support of this assignment was not urged in the trial court. It cannot be logically argued respondent's objection to the receipt in evidence of exhibit 4 would serve to alert the trial court that lack of opportunity to cross-examine the minister preparing the report was a ground for contesting admissibility.

■ We have said many times we consider only those objections made in the trial court. The first aspect of respondent's objection is without merit.

We appreciate chapter 598, The Code, prescribes a totally new procedure for dissolution of marriages in Iowa and that some sections of this chapter are not as explicit as one might desire. Therefore, for the benefit of the bench and bar, it is suggested as a guideline that when a conciliator is appointed by the court under the provisions of section 598.16, The Code, a copy of his report should be furnished to each attorney including any attorney appointed to represent minor children and the court a sufficient length of time before trial to permit study thereof. When such procedure is followed the court may receive without stipulation or consent the conciliator's report in evidence in either a contested or default case subject to examination and cross-examination of the person preparing the report and the persons furnishing the information upon which the report is based.

In this connection it shall be the burden of the party objecting to the report to establish that legal process available to bring the desired witnesses into court for cross-examination has been exhausted and that they are unavailable and beyond the reach of a subpoena. When the opponent sustains this burden, evidence originating from such unavailable witness which does not contain material and relevant matter admissible as an exception to the hearsay rule shall not be given probative value by the trial court or this court.

Petitioner's argument contending that neither the conciliator nor persons furnishing information for the report should be subject to cross-examination is not persuasive.

II. Respondent contends in the second aspect of her objection to exhibit 4 that the conciliator's conclusion constituted an usurpation of judicial function.

Insofar as we have been able to determine, the Iowa dissolution of marriage procedure is the only statute adopting the "no-fault" concept as a standard for termination of marriages which has incorporated a provision for conciliation.

The opinion has been expressed that the legislative purpose of enacting such provision was to foster viable marriage relationships and minimize the problem of hasty divorces. Note, The No Fault Concept: Is This the Final Stage in the Evolution of Divorce?, 47 Notre Dame Law. 959, 969–970, (1972). The legislative history of this statutory enactment supports this opinion. See Peters, Iowa Reform of Marriage Termination, 20 Drake L.Rev. 211, 213–219.

It is this court's obligation to construe the statute with the view of carrying out this obvious legislative purpose if fairly possible. State v. Hanna, 179 N.W.2d 503, 506–507, (Iowa 1970).

Section 598.16 does not attempt to give evidence emanating from the conciliation procedure the probative strength of a presumption or accord it any special weight in the consideration of the ultimate question of whether "there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood the marriage can be preserved."

This section, by requiring conciliation proceedings, affords the court a source of evidence to aid in determining whether the marital relationship should be terminated. Testimony or the report of conciliator is merely another item in the mass of evidence placed before the court.

The minister's report is clearly an opinion. Opinion evidence is seldom conclusive even when uncontradicted. Expert testimony may be used as an aid to the trier of the facts and may be adopted in whole, in part or not at all. The trier of facts may not totally disregard evidence but it has the duty to weigh the evidence and determine credibility of witnesses. Stated otherwise, the trier of facts (here the court) is not bound to accept testimony

as true because it is not contradicted. Larew v. Iowa State Highway Comm., 254 Iowa 1089, 1093, 120 N.W.2d 462, 464; Iowa Development Co. v. State Highway Comm., 255 Iowa 292, 300, 122 N.W.2d 323, 328; Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 643, (Iowa 1969), and authorities cited in these opinions.

█ In light of the principles enunciated in the cited cases, there is little basis for concern that the court will abdicate its function as the trier of facts in dissolution proceedings where conciliator's testimony or report is received in evidence.

This aspect of respondent's objection is without merit.

█ III. In her second proposition respondent asserts the court erred in decreeing dissolution without proof of compliance with required conciliation procedure.

It is noted that the minister appointed as a conciliator was a person within the choices permitted the court under section 598.16, The Code, which provides for conciliation in dissolution proceedings. His report to the court, dated December 4, was more than 90 days after entry of the order for conciliation. His report is evidence that counseling was offered to the person before the court and that the conciliation procedure had been completed. It was received into evidence without proper objection.

Respondent's second proposition cannot be sustained.

IV. In another proposition relied on for reversal respondent contends the court erred in granting dissolution without adequate corroboration.

Section 598.10, The Code, provides:

"Corroboration of petitioner. No dissolution of marriage shall be decreed on the testimony of the petitioner alone."

This statute was taken from section 598.-7, The Code, 1966, without change except for substitution of the words "dissolution of marriage" for the word "divorce."

It is to be noted that California in its statute revising its law governing divorce eliminated the necessity of a corroborating witness. See Hayes, California Divorce Reform: Parting is Sweeter Sorrow, 56 A.B.A.J. 660, 661 and an article, "The New California Divorce Law," 1969, by Walter T. Winter, at page 133.

Petitioner called Russell C. Herbert as his corroborating witness. We have previously referred to his testimony.

█ In discussing the purpose of section 598.7, The Code, 1966, this court has said corroboration is required to prevent collusion between the parties. However, it is not necessary that plaintiff's testimony be substantiated in every detail or the corroboration alone sustain the decree. Moreover, the corroboration required may be supplied by direct or circumstantial evidence, testimony of the other spouse, his or her elusiveness, or failure to deny that presented by plaintiff. Arnold v. Arnold, 257 Iowa 429, 435, 133 N.W.2d 53, 57; Erickson v. Erickson, 261 Iowa 264, 269, 154 N.W.2d 106, 110; Schantz v. Schantz, 163 N.W.2d 398, 403, (Iowa 1968); Garrison v. Garrison, 179 N.W.2d 466, 469, (Iowa 1970).

We find no support for determining that the Second Session of the Sixty-third General Assembly had a different purpose for enacting section 598.10 other than that announced in these decisions.

█ As stated, with elimination of the specific categories of fault grounds enumerated in section 598.8, The Code, 1966, by the revision, the only basis for termination of the marriage under our present procedure is a breakdown of the relationship to the extent the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood the marriage can be preserved. Section 598.17, The Code, 1971.

■ Since the purpose of corroboration is to prevent collusion in seeking dissolution of a marriage, the requirement of section 598.10 is met when the corroboration satisfies the court from all the evidence presented (1) there has actually been a breakdown of the relationship and (2) there remains no likelihood the marriage can be preserved.

■ In the present case petitioner's evidence bearing on these two questions was corroborated not only by the testimony of Herbert but also by the report of the conciliator. We find no reason to disagree with the court's conclusion.

V. Respondent contends in her remaining proposition the decree determining property division and fixing alimony and support money was not just.

Section 598.21, The Code, provides:

"Alimony—custody of children—changes. When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be *justified*.

"Subsequent changes may be made by the court in these respects when circumstances render them expedient." (emphasis supplied)

The only significant change made by the revision is substitution of the word "justified" for the word "right" which appeared in section 598.14, The Code, 1966.

She maintains enactment of the dissolution of marriage procedure made no substantive change in the law relative to the matter of the division of property, allowance of alimony and support. Respondent argues that the general formula set forth in Schantz v. Schantz, 163 N.W.2d at 405, as a guideline in arriving at an equitable determination of financial or property rights and obligations of the parties to a divorce action remains a valid factor for consideration under the present law in determining a just division of property or allowance of alimony upon a judicial termination of a marriage.

■ Respondent's contention that the revised statute made no change in the law relative to the matter of division of property and allowance of alimony and support money was rejected in In re Marriage of Williams, 199 N.W.2d 339, (filed June 29, 1972).

In the Williams dissolution this court held that not only the "guilty party" concept must be eliminated but evidence of the conduct of the parties insofar as it tends to place fault for the marriage breakdown on either spouse must also be rejected as a factor in awarding property settlement or an allowance of alimony or support money.

We further held evidence bearing on the fourth factor set forth in Schantz v. Schantz, 163 N.W.2d at 405, as a suggested aid to trial courts in adjusting the rights and obligations of the parties upon judicial termination of the marriage relationship was not admissible on the issue of property settlement or allowance of alimony but that evidence relating to those remaining factors specified in that opinion was admissible for consideration on this issue if otherwise competent.

There is no indication in the record the trial court in the case before us gave any consideration to the fault concept in determining the division of property or allowance of alimony.

■ This is in equity. Our review is de novo. Rule 334, Rules of Civil Procedure.

The monthly payments of $220 on the Lake View mortgage will be terminated in view of the court's decree ordering this property sold and the net proceeds divided. The award of the family home to petitioner will eliminate rental and utility payments by petitioner on the trailer house he and the children occupied at the time of trial.

**854**

On the other hand, it will now be necessary that respondent acquire other housing accommodation for herself and two minor children, an expense she did not have while occupying the family residence during the pendency of these proceedings. She will have utility payments which were previously made by petitioner.

The record does not disclose the extent of any property held by either party at the time of marriage to aid us in our review. However, as pointed out, these parties were married for some 20 years and respondent is not now particularly equipped to obtain profitable employment to aid in her maintenance. During the marriage she became accustomed to a standard of living that cannot be maintained on the amount of alimony allowed her by the court's decree.

In our opinion the decree should be modified by increasing the allowance of alimony to $250 per month; in all other respects we find the division of property and allowance of support money to be just.

VI. Respondent makes application for attorney fees for services rendered on this appeal. Her attorney has filed a certificate setting forth in chronological order an itemized account of time spent in preparing the record, opening brief and argument, reply brief and argument and appearance in this court for oral argument. It is apparent counsel has spent a great deal of time preparing this appeal.

As mentioned, respondent's counsel was awarded $600 for services rendered at trial. Respondent should be awarded an additional allowance of $750 toward her attorney fees on this appeal.

Judgment shall be entered in the trial court for such additional amount.

Costs shall be taxed against petitioner.

Except as modified with respect to the allowance of alimony and the allowance for attorney fees made herein, the decree is affirmed.

The matter is therefore—affirmed and remanded with directions to modify.

All Justices concur except McCORMICK, J., who takes no part.