In re the MARRIAGE OF Mary Jane MORGAN and Charley W. Morgan.

Upon the Petition of Mary Jane MORGAN, Appellee,

and Concerning, Charley W. MORGAN, Appellant.

No. 56040.

Supreme Court of Iowa.

May 22, 1974.

Johnson, Oakley & Pfeffer, Clinton, for appellant.

Shaff, Farwell & Senneff, Clinton, for appellee.

Heard before MOORE, C. J., and MASON, REES, UHLENHOPP and HARRIS, JJ.

MASON, Justice.

This is an appeal by respondent-husband from a decree denying his counterclaim for dissolution of the marriage relationship and granting petitioner-wife separate maintenance and child support in proceedings instituted under chapter 598, The Code, 1971.

March 22, 1971, Mary Jane Morgan filed petition for separate maintenance in the Clinton district court alleging there had been a breakdown of the marriage relationship to the extent the legitimate objects of matrimony had been *temporarily* impaired but petitioner believed there remained reasonable likelihood the marriage could be preserved.  She asked a decree of

separate maintenance, temporary and permanent child support, alimony, custody of the children and attorney fees.

March 25 respondent, Charley W. Morgan, filed motion to dismiss and for more specific statement. In motion to dismiss he asserted the petition failed "to state that there is a permanent impairment of the legitimate objects of matrimony and further fails to state there is no likelihood that the marriage can be preserved as required by section 598.5 as made applicable to petitions for separate maintenance under section 598.28." In the other motion respondent moved that paragraph 8 of the petition be made more specific by filing a financial statement as required by section 598.13.

April 26, after hearing on the motion to dismiss and being advised that unless the petition was amended to add the breakdown of the marriage relationship the motion would be sustained, petitioner filed amendment to the petition. In lieu of paragraph 7 of her original petition Mrs. Morgan alleged "that there has been a breakdown of the marriage relationship of petitioner and respondent to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved."

May 3 respondent filed answer, admitted the breakdown of the marriage relationship and counterclaimed for dissolution alleging breakdown of the marriage relationship in the statutory language required by section 598.5(7), The Code. In answer to the counterclaim petitioner admitted this paragraph of respondent's counterclaim.

August 17, 1970, Mr. Morgan had filed petition for dissolution of the marital relationship between himself and Mary Jane Morgan. March 10, 1971, the court entered an order denying dissolution of the marriage. No appeal was taken by Mr. Morgan from that judgment.

However, the court in its opinion in the present action noted the parties had stipulated that the record of the prior proceedings might be used as evidence and considered in determining the one at hand.

We set out a summary of the factual situation as disclosed by the record.

Charley W. Morgan and Mary Jane Morgan were married August 30, 1947. During the course of the marriage eight children were born and at the time of trial six were still living at home, namely: Mark Douglas, born April 20, 1953; Claudia Jane, born August 30, 1954; Steven Thomas, born December 14, 1957; Rita Jean, born November 30, 1959; Joan Patricia, born February 7, 1963; and Diane Kay, born May 26, 1966.

Mr. Morgan is a high school graduate and a licensed embalmer; after working for the Pape Funeral Home for over twenty years he discontinued employment there and began work in the laboratory of the Clinton Corn Processing Company. Mary Jane, a high school graduate, had been a housewife throughout the marriage taking care of the children.

This marriage was apparently sound for approximately 20 years; there has been some conflict in regard to raising the children and in regard to sexual matters. The relationship began to break down about 1967 when respondent began seeing an old high school friend, Mrs. Aileen Perkins. In August 1967 Mary Jane began treatment for a female problem. Because of this condition it would be better for her not to work or overexert.

Respondent's relationship with Mrs. Perkins developed steadily in 1967; they first had sexual relations some time in 1967 while Mrs. Perkins was still married. Their relationship was apparently a significant factor in the obtaining of a divorce by Mr. Perkins. Morgan was subpoenaed and testified in that action he was dating Mrs. Perkins.

The relationship continued up to and after court action was commenced between the parties here. At the time of the first

action Morgan had been living with Mrs. Perkins for three months; this living arrangement has continued since the denial of the first dissolution action.

The parties own a home purchased in 1967 for $17,000.00 carrying a mortgage of approximately $12,000.00. They also owned a second home which was being sold on contract on which there was an equity of approximately $3000. Respondent owned a 1966 Rambler on which he still owed about $800–$1000. His gross income for 1970 was $11,167.65 and a raise was expected the next year; his hourly wage was $4.30. Mary Jane set her basic expenses at $670 per month.

At the hearing in the present case Mary Jane restated her love for her husband and her willingness to take him back. Her expenses were now higher due to rises in the cost of living; she still owed $300 on an auto purchased from her brother and $300 to the bank for a loan. Her health problem remained making it impossible for her to work. The second home had since been sold and paid off and together with tax refund checks there was a fund in the balance of $3,508.36.

Mrs. Morgan also testified she had filed for separate maintenance and alleged breakdown of the marriage relationship in the manner previously stated because she felt she had to do so in order to receive support for the children. Irregardless of the pleadings, she felt the legitimate objects of matrimony had not been destroyed on her part but had been so destroyed by her husband; she further believed there was reasonable likelihood the marriage could be preserved.

Morgan testified he was still living with Mrs. Perkins and their relationship was the same as before. He felt the legitimate objects of matrimony had been destroyed and that there was no reasonable likelihood the marriage could be preserved.

The court, relying on its decision in the first action denying dissolution, and to be consistent in the absence of any change in fact, denied the counterclaim for dissolution. The court quoted the following from the previous opinion: "It is therefore the finding of the Court that the letter and intent of the law is that a one-sided action upon the part of one of the spouses directed solely for the purpose of satisfying his own pleasure, may not be construed as a breakdown of the marriage relationship where the other spouse desires to continue such relationship and where the pricks of conscience presented by the existence of six children in the home might yet present reasonable likelihood that the marriage can be preserved."

Mrs. Morgan's petition for separate maintenance was granted; petitioner was given custody of the children and Mr. Morgan was ordered to pay $250 every two weeks as child support and $50 every two weeks as temporary support and maintenance for Mary Jane. Mary Jane was given possession of the house and use of household furniture with the understanding "there might have to be a modification to meet the altering circumstances, such as employment of children, and so forth."

Respondent was given reasonable visitation rights and was required to maintain health insurance for the minor children as long as he was required to support them. He was awarded the Rambler and ordered to pay all debts the parties accumulated up to the filing of the decree.

These issues are presented for review: (1) Should the trial court have granted respondent a dissolution of marriage based on his counterclaim?; (2) Was there sufficient evidence presented upon which the trial court could grant a decree of separate maintenance to petitioner Mary Jane Morgan?; (3) Does a finding of a breakdown in the marriage relationship compel the court to decree dissolution of marriage as opposed to granting a decree of separate maintenance?; and (4) Was the property settlement just and the award of child support and separate maintenance reasonable?

Review of a dissolution proceedings is de novo; it is our duty to examine the whole record and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any, is preserved in the course of the trial proceedings; while we give weight to the findings of the trial court we will not abdicate our function as triers de novo on appeal. In re Marriage of Cook, 205 N.W.2d 682, 684 (Iowa 1973).

I. Respondent contends the trial court erred in denying his counterclaim for dissolution by finding fault of respondent as a basis for such denial even though the facts showed existence of the basis for dissolution.

In that portion of the trial court's decree designated "Determination of the Case" the trial court, after quoting from its previous opinion to the extent set out earlier, stated:

"* * * The Court in the former action was motivated primarily by the fact that the petitioner in that cause [respondent here] failed to come into Court of equity with clean hands, and could not by his conduct bring about a dissolution of a marriage where the party who had entered into such a contractual relationship was free from fault and a great number of minor children were affected by the conduct of the person at fault.

"The Court continues to adhere to that viewpoint, and it is the decision of the Court that the respondent's petition for dissolution of marriage be and it is herewith denied."

The Second Session of the Sixty-third General Assembly, chapter 1266, repealed the Iowa divorce statutes and enacted a dissolution of marriage procedure which became effective July 1, 1970. Chapter 598, The Code, now governs dissolution of marriage. The revised statute makes the breakdown of the marriage the sole basis for termination of the marital relationship.

The pertinent portion of section 598.17, The Code, 1971, is in this language:

"Dissolution of marriage—evidence. A decree dissolving the marriage may be entered when the court is satisfied from the evidence presented that there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved."

Divorce in Iowa is no longer governed by fault of one of the parties. In re Marriage of Williams, 199 N.W.2d 339, 344 (Iowa 1972), has this statement: "Fault concept as a standard for granting dissolution of the marital relationship has been definitely eliminated by chapter 598, The Code, 1971."

The doctrine of recrimination has now been eliminated as a factor for consideration in dissolution proceedings by this language in section 598.18, The Code, 1971:

"Recrimination not a bar to dissolution of marriage. If, upon the trial of an action for dissolution of marriage, both of the parties are found to have committed an act or acts which would support or justify a decree of dissolution of marriage, such dissolution may be decreed, and the acts of one party shall not negate the acts of the other, nor serve to bar the dissolution decree in any way." See In re Marriage of Kurtz, 199 N.W.2d 312, 315 (Iowa 1972).

The trial court's denial of respondent's counterclaim for dissolution was based on the concept that one party to a marriage may not by his own conduct bring about a dissolution of the marital relationship where the other spouse is free from fault and desires to continue the marriage.

It appears obvious from a de novo review there is merit in respondent's argument the trial court used fault as a basis for its decision in denying his counterclaim

for dissolution rather than determining whether the evidence showed there had been a breakdown of the marriage to the extent the legitimate objects of matrimony had been destroyed and there remained no reasonable likelihood the marriage could be preserved.

In Paulsen v. Paulsen, 243 Iowa 51, 57, 50 N.W.2d 567, 571 this court said: " * * * We are committed to the doctrine of recrimination, that is, if the evidence shows each party to be guilty of an offense which would give the other a right to a divorce, it must be denied to each. 'If both parties have a right to divorce, neither party has.' " In 1965 in Nichols v. Nichols, 257 Iowa 458, 460, 133 N.W.2d 77, 79, this statement was quoted with apparent approval.

Of course, both of these decisions were decided under the statutes governing divorce as they existed prior to enactment of the dissolution of marriage procedure now in force in this state. In view of section 598.18 the principle stated in these two decisions is no longer the law.

■ Insofar as the court's denial of dissolution sought in the counterclaim is predicated on the principle respondent failed to come into court with clean hands the court was in error.

The next question is whether the evidence established the ground for dissolution required by the provisions of section 598.17.

In seeking to uphold the trial court's decision petitioner argues there was no corroboration of respondent's evidence in support of his counterclaim for dissolution as required by section 598.10. This section provides: "Corroboration of petitioner. No dissolution of marriage shall be decreed on the testimony of the petitioner alone."

In re Marriage of Boyd, 200 N.W.2d 845, 852–853 (Iowa 1972), 55 A.L.R.3d 570, sets out the purpose and use of this statute as follows:

"In discussing the purpose of section 598.7, The Code, 1966, this court had said corroboration is required to prevent collusion between the parties. However, it is not necessary that plaintiff's testimony be substantiated in every detail or the corroboration alone sustain the decree. Moreover, the corroboration required may be supplied by direct or circumstantial evidence, testimony of the other spouse, his or her elusiveness, or failure to deny that presented by plaintiff. * * * [citing authorities]

"We find no support for determining that the Second Session of the Sixty-third General Assembly had a different purpose for enacting section 598.10 other than that announced in these decisions.

" * * *

"Since the purpose of corroboration is to prevent collusion in seeking dissolution of a marriage, the requirement of section 598.10 is met when the corroboration satisfies the court from all the evidence presented (1) there has actually been a breakdown of the relationship and (2) there remains no likelihood the marriage can be preserved."

In re Marriage of Collins, 200 N.W.2d 886, 890 (Iowa 1972), has this statement:

"The requirement for corroboration is almost repugnant to the concept of 'no-fault' dissolution of marriage. California in its revision of its marriage termination statute, and in going from a 'fault' to a 'no-fault' philosophy and concept, eliminated the necessity of corroboration of a petitioner. The section requiring corroboration is embraced, however, in our dissolution statute and we must proceed within its framework.

" * * * The criteria for dissolution now is a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and it would, therefore, appear collusion is no longer relevant to this criteria. In truth, if it were demonstrated the parties

were in collusion to bring about a termination of the marriage relationship, it would further evidence the fact of the marriage breakdown."

■ In the present case Morgan testified he no longer loved his wife and did not want to be married to her. The substance of this testimony was also stated by the conciliator. Mrs. Perkins testified to the sexual relationship between herself and Morgan, their life together and the belief that he no longer cared for his wife. The evidence also showed that Morgan had lived away from his family and with Mrs. Perkins for approximately nine months prior to the hearing on this action; he further avoided his wife and family and had seen the children only once in the prior five months. Testimony of Mary Jane tacitly admitted conflict and difficulty in regard to sexual matters in their marriage; she admitted to having a full knowledge of the relationship between Charley and Mrs. Perkins. From all this evidence, even though much is circumstantial as to whether the relationship had broken down and there remained no reasonable likelihood that the marriage could be preserved, we conclude the statutory requirement for corroboration was sustained.

However, the trial court did not deny the counterclaim seeking dissolution because respondent's evidence bearing on the statutory ground therefor was not corroborated. Instead, it determined dissolution should be denied because respondent did not come into court with clean hands.

In carrying out the responsibility imposed upon this court in a de novo review of dissolution proceedings it is necessary to examine the whole record for the purpose of determining first whether there has been a breakdown of the marriage relationship to the extent the legitimate objects of matrimony have been destroyed.

■ Examination impels the conclusion the marital relationship has broken down to the extent the legitimate objects of mat-

rimony have been destroyed. Certainly, Morgan's conduct in openly living with Mrs. Perkins under the circumstances described in this record, his complete disregard of his responsibility as a father and express dissatisfaction with his marriage to petitioner and his decision that he no longer wished to remain married to his wife and his desire to get away from her sense of duty and responsibility convinces us there has been a breakdown of the marriage.

The remaining factor, reasonable likelihood that the marriage can be preserved, is the important issue. Consideration of the marriage as a whole and the purpose and intent of the dissolution procedure enacted by the legislature leads to the conclusion there is no reasonable likelihood this marriage can be preserved.

In answer to the first issue presented for review in this appeal we hold the trial court should have granted respondent a dissolution of the marriage based on his counterclaim.

II. Respondent next insists the court erred in granting separate maintenance and denying dissolution when petitioner testified there had been a breakdown on respondent's part but not on her part.

■ Petitioner in support of the trial court's decree maintains that the grounds for separate maintenance are the same as before enactment of what is now chapter 598, The Code, and there was sufficient competent evidence to justify the trial court in granting separate maintenance. She takes the position that when a husband voluntarily deserts his wife and family and fails to provide for their support, the basis for a separate maintenance should be allowed under the present statutory action of separate maintenance the same as it was allowed when separate maintenance was under the general equitable powers of the court.

We do not agree with petitioner's contention the grounds for separate mainte-

nance are the same as before enactment of the new dissolution procedure.

This court observed in In re Marriage of Kurtz, 199 N.W.2d at 314:

"Under the Iowa law before adoption of what is now chapter 598, The Code, 1971, a cause of action for separate maintenance was not statutory in contrast to divorce actions. However, as the Iowa case law developed, the pattern for the action was nearly identical to one for divorce except as to the remedy afforded. A cause sufficient for granting a divorce had to be established, except that desertion did not have to continue for two years as required for divorce. Peters, Iowa Reform of Marriage Termination, 20 Drake L.Rev. 211, 225. Thus, a separate maintenance action was extremely fault-oriented. Once the decree was entered, if either party later wanted a divorce, a new action had to be instituted. Further, since the doctrine of res judicata was applicable to divorce and separate maintenance actions, any cruelty or evidence relating to any other statutory grounds had to occur after the separate maintenance decree was granted. * * * [citing authorities]."

Under the new law separate maintenance has become statutory and its dependence upon the dissolution provision of the statute has been formalized. Iowa Reform of Marriage, supra, at 225. Section 598.28 provides: "Separate maintenance and annulment. A petition shall be filed in separate maintenance and annulment actions as in actions for dissolution of marriage, and all applicable provisions of this chapter in relation thereto shall apply to separate maintenance and annulment actions."

As stated, before enactment of the statute separate maintenance was extremely fault-oriented. In Graves v. Graves, 36 Iowa 310, 314, a case relied on by petitioner, the court stated: "* * * Of course it is necessary that she [the wife] shall establish not only the fact of separation but also that such fact rightfully and properly exists, by reason of the wrongful conduct of the husband, and without fault on her part."

In several cases since the new dissolution of marriage procedure became effective July 1, 1970, this court has noted that the revised statute makes the breakdown of the marriage the sole basis for termination of the marital relationship and eliminates the specific categories of fault grounds enumerated in section 598.8, The Code, 1966, as a standard for granting dissolution. See In re Marriage of Williams, 199 N.W.2d at 344; In re Marriage of Boyd, 200 N.W.2d at 848; and our decisions following these two opinions.

In *Williams* we determined from the legislative history of what is now chapter 598, The Code, that the overriding legislative purpose of the dissolution act was to eliminate the fault-based standards for termination of marriages; the most significant aspect of the new law was the attempt to eliminate the notion of fault or marital guilt from dissolution proceedings and to do away with the hypocrisy of the fault approach.

It is true the foregoing statements of principle were made in cases where termination of the marital relationship was the relief sought rather than separate maintenance as here. Nevertheless, it is not logical that the legislature by this enactment intended to eliminate the fault concept where termination of the marital relationship was sought and preserve the fault-based standards with all of its frequently cited shortcomings for separate maintenance procedure.

Along this line attention is called to section 598.29, The Code, which sets forth the causes for which annulment may be granted. This section in our opinion makes an exception to what must be alleged in annulment cases. But, there is no similar provision making exception to the provision contained in section 598.28 set out, supra, for separate maintenance.

We hold a proceedings for separate maintenance is now governed by the pro-

visions of chapter 598 dealing with dissolution of marriage. Consequently, one seeking such relief must establish the requirements prescribed in section 598.17.

It is conceivable petitioner's argument was in response to respondent's position that it was necessary for petitioner to establish breakdown of the marital relationship to the extent the legitimate objects to matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved as is required under chapter 598 dealing with judicial termination of the marital relationship; and this could not be accomplished when the spouse seeking relief expressed the view the breakdown was one sided and not on her part. In any event, petitioner's argument is without merit.

■ Respondent's position as just stated overlooks the fact that in a proceedings under chapter 598 it is the function of the court, not the parties, to decide in the final analysis whether the evidence presented regarding the whole marriage supports first a finding that there has been a breakdown of the marriage relationship to the extent the legitimate objects of matrimony have been destroyed and second whether there remains any reasonable likelihood that the marriage can be preserved. It is obvious that in making this determination the court must depend to a considerable extent upon the subjective state of mind of the parties. Hence, the central inquiry in each situation should be a subjective rather than an objective one. Nevertheless, the act does not constitute a license for dissolution of marriage by consent.

■ Independent examination of the record convinces us the evidence would ordinarily justify a decree of separate maintenance which in effect answers the second issue presented for review in the affirmative.

■ III. As a result of our de novo review we thus are confronted with a factual situation where the evidence would support a decree granting separate maintenance under chapter 598 and at the same time support a decree terminating the marital relationship under this chapter. This gives rise to the third issue presented for review—does a finding of breakdown in the marriage relationship compel the court to decree dissolution of marriage as opposed to granting a decree of separate maintenance in a situation where one spouse asks for separate maintenance as relief and the other counterclaims seeking termination of the marriage?

The answer is yes. Marriage is a relationship between two people, and if one of those people has determined it shall not continue, this would seem to be plain evidence the relationship has broken down. A dead marriage is no less dead because only one of the parties is demonstrably at fault. When a marriage has failed and the family ceases to be a unit the legitimate objects of matrimony have been utterly destroyed. De Burgh v. De Burgh, 39 Cal.2d 858, 863–864, 250 P.2d 598, 601. When the evidence shows as here that the marital relationship of the parties was no longer viable, it should be dissolved under our statute. Refusal of dissolution under the factual circumstances shown here would, in our judgment, amount to a legal perpetuation of a relationship which has ceased to exist in fact.

The trial court erred in refusing to grant respondent's counterclaim for dissolution. This conclusion requires a reversal.

IV. In its decree the trial court ordered respondent to pay as child support the sum of $250 every two weeks, commencing on the date of the trial court's decree and to pay petitioner as support and maintenance for herself the sum of $50 every two weeks, also to commence on the date of the decree.

■ The record discloses that Mark Douglas became 21 years of age April 20, 1974 and Claudia Jane will be 20 August 30, 1974. From the record we have no

way of knowing whether either of these two children is a full-time student in a college or university or area school as provided in section 598.1(2).

The court gave no indication as to how long the child support payments were to continue.

The record is insufficient to enable us, even in a de novo review, to make a just determination of the amount for child support payments, alimony for Mary Jane Morgan or to make a proper distribution of the property.

The case must be remanded to the district court with instructions to set a time and place of hearing and prescribe the form of notice to be given of such hearing on respondent's application and then proceed to make such provisions as are contemplated under sections 598.1(2) and 598.-21. See also Youel v. Youel, Iowa, 218 N.W.2d 449 (filed this day).

The court is further directed to set aside its decree granting separate maintenance to petitioner and to enter a decree granting respondent a dissolution of the marriage.

The payments required of respondent for child support and maintenance for the petitioner shall both continue in the amounts fixed and at the times specified in the trial court's decree from which this appeal is taken until this matter is finally determined by the trial court as directed herein.

Petitioner's application for attorneys' fees for services rendered in this appeal was ordered to be submitted with this appeal. Attached to the application is an itemized statement showing the dates and times involved for those services with money advanced for printing brief and argument.

Petitioner should be allowed $750 as fees for services rendered her on this appeal plus the additional sum of $55.35 for money advanced. Judgment should be en-

tered in the trial court against respondent for this additional amount.

The case is therefore

Reversed and remanded with directions.