# IN THE COURT OF APPEALS OF IOWA

No. 19-0495
Filed June 3, 2020

IN RE THE MARRIAGE OF JAMES C. SCHMIDT
AND BEVERLY J. SCHMIDT

Upon the Petition of
JAMES C. SCHMIDT,
        Petitioner-Appellant,

And Concerning
BEVERLY J. SCHMIDT,
        Respondent-Appellee.

_____

Appeal from the Iowa District Court for Palo Alto County, Nancy L. Whittenburg, Judge.

James Schmidt appeals from the decree of separate maintenance entered by the district court with regard to his marriage to Beverly Schmidt. **AFFIRMED.**

Willis J. Hamilton of Hamilton Law Firm, P.C., Storm Lake, for appellant.

Jennifer Bennett Finn of Pelzer Law Firm, LLC, Estherville, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**VAITHESWARAN, Presiding Judge.**

James and Beverly Schmidt married in 1953. Sixty-five years later, the district court overruled James' petition for dissolution of the marriage and granted Beverly's request for separate maintenance. After appointing James a guardian ad litem based on his dementia and after considering the testimony of multiple witnesses, the court equally divided a farm, giving each spouse a life estate in the other's interest, and ordered James to pay Beverly alimony of "$1000 per month . . . until the death of either of them." The court also ordered James to "make the premium payment on the health insurance coverage for Beverly available through [his] federal pension."

On appeal, James contends the district court should have (1) dissolved the marriage, (2) characterized certain "financial benefits . . . from his mother" as separate inherited or gifted property; (3) awarded less alimony; and (4) not ordered him to pay attorney and guardian ad litem fees.

## I.      *Dissolution versus Separate Maintenance*

A dissolution decree "may be entered when the court is satisfied from the evidence presented that there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved." Iowa Code § 598.17(1) (2016). In the alternative, a court may file a decree for separate maintenance without dissolving the marriage. *See id.* §§ 598.21(1), 598.28; *In re Estate of Whalen*, 827 N.W.2d 184, 185 n.1 (Iowa 2013) (citing 2 Marlin M. Volz, Jr., *Iowa Practice Series*, *Methods of Practice* § 31:31, at 869 (2012)).

James contends the court's "financial rulings . . . would not have differed from rulings made in a dissolution" and the court did not "explain" how a decree of separate maintenance would place the parties in a better financial position in the final years of their lives. To the contrary, the district court thoroughly explained the benefits of a separate maintenance decree. The court found that Beverly had "health insurance coverage through James' pension and a dissolution of the parties' marriage would likely sever Beverly's right to that coverage." The court also found that a separate maintenance decree would allow Beverly to receive market-based income from the parties' farm, which was cash-rented to family members at discounted rates. The record fully supports the court's findings.

We begin with James' testimony. He agreed with his attorney that his marriage relationship had broken down, but when asked whether he wanted to be divorced, he responded, "Well, we've had some tough times in the past. So I don't know." His equivocal testimony stood in marked contrast to the testimony of the husband in *In re Marriage of Morgan*, 218 N.W.2d 552, 558 (Iowa 1974), cited by James, who stated "he no longer loved his wife and did not want to be married to her."

We turn to the report of James' guardian ad litem. She expressed "concern" about his responses. She noted that he was "easily led into answers and positions without truly understanding what [was] being asked." She cited a pretrial interview in which "he was adamant that Beverly had filed the divorce" action and "[h]e was confused on the facts that led to the divorce, who his attorney was, and what his assets were." Nonetheless, he "repeated multiple times that even though he and Beverly couldn't live together anymore, he cared about her and wanted to make

sure she was being taken care of." *Cf. id.* (concluding the husband's "conduct in openly living with [a woman other than his wife] under the circumstances described in this record, his complete disregard of his responsibility as a father and express dissatisfaction with his marriage to petitioner and his decision that he no longer wished to remain married to his wife and his desire to get away from her sense of duty and responsibility" established "a breakdown of the marriage"). The guardian ad litem stated James "had little to no input into the pretrial stipulation or trial preparation" and the "financial information" was prepared and provided by his relatives who stood to gain from a dissolution of the marriage. She characterized the case as "as a probate contest under the cloak of a dissolution of marriage."

Beverly articulately corroborated many of the guardian ad litem's observations. She testified James suddenly moved out of the family home—a decision instigated by their son after she applied to become James' conservator.[1] Her intent in filing the conservatorship action, she said, was not to have James placed in a nursing home, as their son told James, but to address James' inability to handle their "money situations," including receipt of cash rent from their farm. She explained James also worked as "a mail carrier for 28 years" and had "a very good retirement," and it "didn't make sense to" her that they "didn't have enough money all the time."

Beverly attributed James' flagging financial competence to his progressive Alzheimer's disease and dementia, for which "there was very little that could be done." She testified to certain family members' efforts to usurp control over their

---

[1] The action was subsequently dismissed.

assets and James' failure to respond to those efforts. She described her dire financial situation in the wake of these developments and her need for medical insurance through James' policy. With respect to the pending dissolution petition, Beverly stated she "stopped to see [James] one time, and he thought" she was the one who filed for divorce. She told him, "No. It was you."

Beverly unequivocally stated she did "not want a divorce." She explained she had "been married to him for 63 years. And it's unimaginable that anybody would want a divorce after that time—amount of time." *See, e.g.*, *id.* at 560 ("It is obvious that in making this determination [of a breakdown of the marriage] the court must depend to a considerable extent upon the subjective state of mind of the parties."). The district court weighed her testimony against James' brief and controlled responses and credited Beverly's version. This was the court's prerogative. *See In re Marriage of Roberts*, 545 N.W.2d 340, 343 (Iowa Ct. App. 1996). On our de novo review, we conclude the district court acted equitably in declining to dissolve the marriage and in determining "both parties will be in a better financial position to provide for their needs in the final years of their lives under separate maintenance."

## II.     *Inheritance*

Decades ago, James purchased a farm from his mother using funds she lent him. James did not repay those funds, and, when she died, they were offset against his inheritance. As noted, the district court equally divided the farm between James and Beverly. *See* Iowa Code § 598.21(1) ("Upon every judgment of annulment, dissolution, or separate maintenance, the court shall divide the property of the parties and transfer the title of the property accordingly . . . .").

James argues the farm should have been treated as separate inherited property. He acknowledges "the farm was not inherited from [his] mother," but contends "his ability to finance the purchase of the farm was enhanced by inherited funds." He further concedes "the appreciation in value of the farmland from its acquisition in 1988 until the present day is a marital asset," but claims "[a]n equitable division of the farm" should be less than a 50/50 split.

The district court found the farm was not inherited property. The court pointed to a stipulation denominating 100% of the farmland as "marital property." The court also noted that James' mother transferred the farm to him by warranty deed "nine years before her death" and the farm "was not probated in [her] estate because she had no ownership interest in the farm at the time of her death." The court stated:

> [James] has not provided any authority for his assertion that use of his inheritance proceeds for repayment to decedent's estate of the debt he owed decedent resulting from decedent's loan of money to [him] to buy property during decedent's lifetime, causes the property purchased with the loan to be classified as inherited property and the court has found no authority to support this argument.
>  . . . .
>  . . . . [A]ccordingly, James does not hold title to any portion of the farm by inheritance and the repayment to his mother's estate of debts he owed to her is just that, repayment of debts. His use of funds he would have received as a distributee of his mother's estate to repay debts incurred for renting a farm or purchasing a farm during his mother's lifetime, do not operate to convert an inter vivos transfer to an inheritance. The farm is solely a marital asset subject to equitable division in a dissolution of marriage or order for separate maintenance.

On our de novo review, we discern support for the district court's findings and we agree with the court's analysis. *Cf. In re Marriage of McDermott*, 827 N.W.2d 671, 680 (Iowa 2013) (rejecting the argument that certain property transfers "were an

advancement of [the husband's] inheritance"). We conclude the farm was subject to division. We also conclude the court acted equitably in equally dividing the property based at the very least on the length of the marriage. *See* Iowa Code § 598.21(5).

### III.    *Alimony*

James concedes "[i]t is appropriate that there be an award of alimony," but contends "the amount [ordered by the court] is excessive." He asks us to reduce the sum to $500 per month.

"The question of whether to award alimony is a matter of discretion and not a matter of right." *In re Marriage of Mann*, ___ N.W.2d ___, ___, 2020 WL 2090114, at *4 (Iowa 2020). A court is to consider the factors set forth in Iowa Code section 598.21A(1). *Id.*

The district court found:

> This is a marriage of exceptionally long duration. Beverly is existing on subsistence income. She receives highly discounted or subsidized rent from her daughter and son-in-law. It is not known whether James' federal pension benefits are received under the Federal Employees Retirement System (FERS), the Civil Service Retirement System (CSRS) or a Thrift Savings Plan (TSP) and subject to equitable division herein; however, although the Pretrial Stipulation Form was silent as to the disposition of this asset, as was the evidence at trial, James is receiving the full benefit of his pension income. His income, as a result of this, is substantial[ly] higher than Beverly's income. Without an alimony provision, Beverly's sole source of income is her monthly social security in the amount of $527.00.

The court determined "the length of the marriage and disparity in incomes" supported an award of "traditional or permanent monthly alimony in the amount of $1000, payable until her death or the death of James, whichever first occurs." We discern no abuse of discretion the court's ruling.

## IV.    Fees

The district court ordered James to pay $2000 of Beverly's trial attorney fees and taxed him with $4420 for the guardian ad litem. James challenges the awards.

In granting attorney fees, the district court stated:

> Beverly has not had control of the parties' marital assets or access to them during these proceedings. Instead, either James or his Attorney-in-Fact under a Power of Attorney has controlled the parties' marital assets and often to the advantage of other family members and not the parties to this dissolution. Because Beverly does not and has not had access to marital funds for payment of her fees, she is awarded $2000 in attorney fees payable by James.

We discern no abuse of discretion in the court's ruling. *See In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999).

We turn to the guardian ad litem fees. Although the court divided court costs equally, the court taxed the guardian ad litem fees "as court costs . . . solely against . . . James." James appears to challenge the assessment.

"The general rule is that the court costs are only taxable to the extent provided by statute." *City of Des Moines v. State ex rel. Clerk of Court*, 449 N.W.2d 363, 364 (Iowa 1989). James sought appointment of the guardian ad litem under the authority of Iowa Court Rule 1.211. *Cf.* Iowa Code § 598.12(1) (authorizing appointment of a guardian ad litem for a minor child); *In re Marriage of Loftin*, No. 11-0508, 2011 WL 5394445, at *5 (Iowa Ct. App. Nov. 9, 2011) (requiring apportionment of minor guardian ad litem fees "in the same manner as other costs"). That rule prohibits a judgment against a person "whose physician certifies to the court that the party appears to be mentally incapable of conducting a defense." *See In re Estate of Leonard, ex rel Palmer v. Swift*, 656 N.W.2d 132,

139 (Iowa 2003). The rule says nothing about who should pay the guardian ad litem fees. But Iowa Code section 625.14 authorizes the clerk to "tax in favor of the party recovering costs" certain specified items and "any further sum for any other matter which the court may have awarded as costs in the progress of the action, or may allow." The supreme court has construed the provision to permit the taxation of guardian ad litem fees as court costs. *See Grant v. Laurie*, 533 N.W.2d 563, 564 (Iowa 1995) (referencing section 624.14 and stating, "When, as is usual in Iowa, a guardian ad litem is an attorney, and necessary services include those as an attorney, the fees to be allowed should include those for professional legal services"); *Lalla v. Gilroy*, 369 N.W.2d 431, 434 n.3 (Iowa 1985) (citing section 625.14 and stating, "This court has in the past approved taxation of [a guardian ad litem] fee [in private civil litigation] as court costs"); *cf. State Pub. Def. v. Iowa Dist. Ct.*, 644 N.W.2d 354, 357 (Iowa 2002) (allowing payment of guardian ad litem fees under section 815.10(1), which authorizes payment of fees for an indigent person in criminal and juvenile proceedings); *Garcia v. Wibholm*, 461 N.W.2d 166, 170 (Iowa 1990) (disallowing payment of guardian ad litem fees from public funds). Based on this authority, we conclude the district court appropriately taxed the guardian ad litem fees to James as court costs.

## V.    *Appellate Attorney Fees*

Beverly asks "James to contribute to her [appellate] attorney fees." She did not file an attorney fee affidavit. Accordingly, we decline her request. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007).

**AFFIRMED.**