# IN THE COURT OF APPEALS OF IOWA

No. 18-1910
Filed November 6, 2019

IN RE THE MARRIAGE OF ANDREA KAY MANN
AND STEVEN ROBERT MANN

Upon the Petition of
**ANDREA KAY MANN,**
        Petitioner-Appellee,

**And Concerning**
**STEVEN ROBERT MANN,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Dickinson County, Carl J. Petersen,

Judge.


        Steven Mann appeals several provisions of the decree dissolving his

marriage to Andrea Mann.  **AFFIRMED AS MODIFIED.**


        Matthew G. Sease of Sease & Wadding, Des Moines, for appellant.

        Joseph L. Fitzgibbons of Fitzgibbons Law Firm, L.L.C., Estherville, for

appellee.


        Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**VAITHESWARAN, Presiding Judge.**

Steven and Andrea Mann married in 2002 and divorced in 2017. The district court denied Steven's request for spousal support and assigned a higher value to his guns and accounts receivable than he requested. On appeal, Steven asks us to revisit both issues.

## I. Spousal Support

Steven requested spousal support based on the disparity in his income relative to Andrea's. The district court denied the request, reasoning as follows:

> This is a marriage of 16 years. Steven was married previously. The parties entered the marriage with modest means and now leave the marriage with reasonable assets. Steven['s] employment circumstances have not changed over the period of the marriage. Andrea has improved her earning capacity through her own determination. Steven did not sacrifice for Andrea to improve her earning capacity. Traditional alimony would not be appropriate based upon the length of the marriage and the earning capacity of both parties. Rehabilitative alimony is not appropriate based upon the parties' current employment circumstances. Finally, Steven is not entitled to reimbursement alimony. The record before the Court does not demonstrate that Steven is in need of alimony. Based upon the entire record, the property distribution above and the factors set forth above, the Court concludes alimony shall not be awarded to either party.

On appeal, Steven argues the following factors justified an award of traditional alimony: (A) the length of his marriage, (B) the disparity between his earnings and Andrea's, (C) the fact that most of the couple's assets were accumulated during the marriage, (D) a claimed inequitable property distribution (E) his limited education, (F) the age difference between the parties, and (G) what he characterizes as Andrea's reasonable ability to pay spousal support. *See* Iowa Code § 598.21A(1) (2017) (setting forth the factors for consideration in award of

spousal support). Based on these factors, he seeks (H) modification of the dissolution decree to grant him spousal support "from anywhere between $2395 per month to $3329 per month." He does not specify a duration.

Although a district court has "considerable latitude" in making an award of spousal support, we will modify the award if "it fails to do equity between the parties." *In re Marriage of Schenkelberg*, 824 N.W2d 481, 486 (Iowa 2012). Our review is de novo. *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005).

***A.*** "[D]uration of the marriage is an important factor for an award of traditional spousal support." *In re Marriage of Gust*, 858 N.W.2d 402, 410 (Iowa 2015). "[M]arriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* at 410–11. But the supreme court has approved an award of traditional spousal support in a marriage lasting sixteen years. *Schenkelberg*, 824 N.W.2d at 486–87.

We agree with Steven that the length of the marriage did not preclude an award of traditional spousal support. We turn to the other factors he raises.

***B.*** "The comparative income of the spouses is another factor for the court to consider when evaluating an award of spousal support." *Id.* at 486. "Where there is a substantial disparity, . . . [w]e have . . . approved spousal support where it amounts to approximately thirty-one percent of the difference in annual income between spouses." *Gust*, 858 N.W.2d at 411–12.

Steven and Andrea's earnings differential was significant. Andrea acknowledged as much in confirming the accuracy of figures included in a

summary prepared by Steven. Those annual earnings figures for the four years preceding the dissolution trial were as follows:

|  | Andrea | Steve |
|---|---|---|
| 2017 | $118,286 | $15,730 |
| 2016 | $137,734 | $8859 |
| 2015 | $107,129 | $14,416 |
| 2014 | $124,843 | $16,847 |

Although Andrea testified Steven could earn more if he consistently billed his customers, she agreed she handled the bookkeeping for the business until 2017 and there was no issue with billing until then. Notably, Andrea's annual salary would far outstrip Steven's even if we accepted her testimony that he could earn as much as $5000 per month.

The district court found Andrea's annual income was $118,000 and Steven had an earning capacity of $36,000. Joint tax returns support these figures. We conclude the disparity in earnings justified an award of spousal support.

**C., D.** "All property of the marriage that exists at the time of the divorce, other than gifts and inheritances to one spouse, is divisible property." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). "Property division and alimony should be considered together in evaluating their individual sufficiency." *In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998). "Alimony may . . . be awarded to a spouse in addition to the distribution of property." *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007).

Steven argues the parties accumulated most of their assets during the marriage and "obtained a certain style of living that [he] will have no opportunity to recapture." He also contends, "A majority of the assets awarded to [him] are non-liquid and are nonrevenue generating" and "the assets which are liquid[] are mostly

retirement accounts which cannot be truly liquidated without severe tax penalties." Finally, he notes that he "was also left with all of the parties' marital debt obligations, totaling $57,000." In his view, these property-related factors support an award of spousal support.

The couple appeared to live a comfortable but not extravagant lifestyle. Although many of the assets allocated to Steven were non-liquid, they were business-related assets that assisted him in generating revenue. In addition, Steven received a non-retirement stock fund with a value of $53,503.05. As for the debt allocation, most if not all the debts were accumulated by Steven in connection with his business or following the couple's separation. *See id.* at 703. Specifically, the parties testified to the following purposes for each debt assigned to Steven:

| | |
|---|---|
| $14,934 | Steve's 2014 Chevrolet Silverado |
| $6500 | Steve's 2004 Chevrolet pickup |
| $3726 | Steve's business credit card |
| $7499 | Joint account with each party holding a credit card; amount reflects accumulated debt on Steven's credit card |
| $9138 | Purchase for Steven's business |
| $6500 | business loan |
| $2500 | Payroll |
| $4400 | Payroll |
| $1328 | Payroll |
| $1328 | Payroll |

We conclude the property-related factors Steven raises as grounds for an award of spousal support do not independently support his request for an award.

*E.* "The educational level of each party at the time of marriage and at the time the action is commenced" is a factor for consideration in the spousal support determination. Iowa Code § 598.21A(1)(d). Steven did not have a college degree.

He began a lawn-mowing service at the age of twelve and continued in that business, later adding a snow-removal service. For a period of time, he also worked as a bartender. Andrea received a bachelor's degree in business management. She used her degree to pursue promotions within the company employing her. Her education enhanced her earning capacity and is a factor favoring an award of spousal support to Steven. *See In re Marriage of Clinton*, 579 N.W.2d 835, 838 (Iowa Ct. App. 1988).

*F.* Age is a factor in the spousal support determination. *See* Iowa Code § 598.21A(1)(b). Steven argues his age of forty-nine makes "it difficult for [him] to enter into any new career path." On our de novo review, we disagree. There is no indication Steven lacked the physical or mental ability to begin a new career, if necessary. There also is scant evidence evincing a physical inability to continue in his chosen field. The key roadblock to success was his failure to collect the debts owed to him for services rendered. Shortly before trial, Steven attempted to address the issue by contacting his mother and sister about bookkeeping programs that could be installed on his computer. His age had no bearing on whether he could learn to manage the business side of his operation.

*G.* Finally, we must consider Andrea's ability to pay spousal support. *See Gust*, 858 N.W.2d at 411–12. Andrea testified her expenses consumed her monthly salary and she had no spare money to pay alimony. On our de novo review, we disagree.

Andrea listed her annual income as less than $80,000. As noted, the district court found she received an annual salary of $118,000, a figure supported by the couple's joint tax returns. Even if we accept Andrea's monthly expense total—an

amount Steven contends is inflated—her income as found by the district court would more than accommodate a spousal support award. We are left with the disposition.

*H.* There are three established categories of spousal support—traditional, rehabilitative, and reimbursement. *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008). "The purpose of a traditional or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." *Gust*, 858 N.W.2d at 408 (quoting *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997)). "Traditional spousal support is 'payable for life or so long as a spouse is incapable of self-support.'" *Becker*, 756 N.W.2d at 826 (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 63–64 (Iowa 1989)). "Rehabilitative alimony was conceived as a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *Francis*, 442 N.W.2d at 63. "Because self-sufficiency is the goal of rehabilitative alimony, the duration of such an award may be limited or extended depending on the realistic needs of the economically dependent spouse, tempered by the goal of facilitating the economic independence of the ex-spouses." *Id.* at 64. Finally, reimbursement alimony "is predicated upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other." *Id.*

Although our courts have articulated these three categories of spousal support, "there is nothing in our case law that requires us, or any other court in this state, to award only one type of support." *Becker*, 756 N.W.2d at 827. After

considering the statutory factors, the court may fashion an award that overlaps the lines drawn for each category. *See id*.; *In re Marriage of Witherly*, 867 N.W.2d 856, 859 (Iowa Ct. App. 2015) (characterizing district court's spousal support award as a combination of traditional and rehabilitative alimony).

We conclude Steven is entitled to spousal support based on the length of the marriage and the earnings disparity, together with Andrea's education and her prospect for advancement and enhanced earnings. These are the hallmarks of a traditional alimony award. But we recognize that, unlike many situations in which traditional alimony is awarded, Steven earned income throughout the marriage, in his chosen profession. *Cf. Gust*, 858 N.W.2d at 415 ("As is often the case where traditional spousal support is awarded, Linda spent many years as a stay-at-home mom."); *In re Marriage of Geil*, 509 N.W.2d 738, 742 (Iowa 1993) ("By mutual agreement, Linda spent most of those years out of the work force."). Although Andrea's income was significantly greater than his, he was not incapable of self-support in the long-term. He simply needed time to gain the business acumen Andrea exercised during the marriage. For that reason, the award also bears some resemblance to rehabilitative alimony, which has the purpose of self-sufficiency.

Having concluded Steven is entitled to spousal support, we turn to the amount and duration of the award. For awards of traditional alimony, "[w]here there is a substantial [earnings] disparity," the supreme court has stated, "[W]e do not employ a mathematical formula to determine the amount of spousal support." *Gust*, 858 N.W.2d at 411–12. At the same time, the court has "approved spousal

support where it amounts to approximately thirty-one percent of the difference in annual income between spouses." *Id.* at 412.

Steven hangs his hat on the thirty-one percent figure in advocating for a $2395 per month to $3329 per month spousal-support award. He does not specify a duration, presumably because traditional alimony awards ordinarily are of unlimited duration. *See id.* at 415. But, as *Gust* noted, they need not be. *Id.* The duration may be limited where, "after a period of rehabilitation and retraining, the income of the payee spouse 'should allow [the payee] to become self-supporting at a standard of living reasonably comparable to the standard of living [the payee] enjoyed during the marriage.'" *Id.* (quoting *Becker*, 756 N.W.2d at 827). And, of course, rehabilitative alimony is of limited duration. *Becker*, 756 N.W.2d at 826.

We conclude Steven should receive $2395 in spousal support per month. The amount represents thirty-one percent of the lowest income difference between Andrea and Steven's earnings in the four years preceding the dissolution trial. We further conclude Andrea shall pay the sum for a period of three years, which should afford Steven sufficient time to learn the bookkeeping and accounting side of his business. The dissolution decree is modified to reflect these changes.

## II. *Property Distribution*

Steven also challenges the district court's property division as inequitable. He specifically questions the valuation of his business accounts receivable and the value of his guns. In relevant part, the district court stated:

> The parties stipulate to a great majority of the assets and liabilities. The only contentious issue is the accounts receivable that have not been billed for several months. Each party asserts a certain dollar figure . . . . A further contention is the value of guns. It appears that Steven is an avid hunter and has a dozen or so firearms. Andrea

asserts the value to be $20,000, while Steven asserts the value to be $1000, and presents that a majority of the guns were gifts from his father.

The district court assigned a value of $66,000 to the accounts receivable and a value of $5000 to the guns. Both figures are within the range of evidence. *See Hansen*, 733 N.W.2d at 703 ("Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence."); *In re Marriage of Gensley*, 777 N.W.2d 705, 720 (Iowa Ct. App. 2009) (same).

### III.    *Appellate Attorney Fees*

Andrea requests appellate attorney fees in an unspecified amount. An award of appellate attorney fees rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Andrea has the financial ability to pay her own attorney fees. Accordingly, we decline her request.

**AFFIRMED AS MODIFIED.**

Tabor, J., concurs; May, J., concurs in part and dissents in part

**MAY, Judge** (concurring in part and dissenting in part)

I appreciate the majority's thoughtful, well-written opinion. Like the majority, I would affirm the district court's division of the parties' property. I would also deny appellate attorney fees.

As to spousal support, however, I part ways. For the reasons discussed below, I would affirm the district court's decision to deny support.

As will also be discussed, however, I would not accept Andrea's invitation to consider Steven's domestic abuse as part of our spousal-support analysis. While public policy may support her invitation, our current law does not.[1]

**I. Denial of spousal support was an equitable outcome.**

I begin with our principles of review. In general, the trial judge is best positioned to understand the parties and their situations. While appellate courts "must rely on the printed record," the trial judge "is greatly helped in making a wise decision about the parties by listening to them and watching them in person." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted). So we appreciate "the district court is best positioned to evaluate the needs of parties." *In re Marriage of Dirkx*, No. 18-0422, 2019 WL 3330625, at *2 (Iowa Ct. App. July 24, 2019). And we "recognize the [district] court [is] in the best position to balance the parties' needs." *In re Marriage of Gust*, 858 N.W.2d 402, 416 (Iowa 2015).

Because of the district court's superior vantage point, we afford that court "considerable latitude" in fashioning or denying an award of spousal support. *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996). While our review is de

---

[1] To be clear: I believe the majority agrees with me on the domestic abuse issue. I draw attention to the issue because it seems likely to arise again in the future.

novo, we will disturb the district court's determination "only when there has been a failure to do equity." *Id.*

Latitude means "freedom of action or choice." *Latitude*, Webster's New Collegiate Dictionary (1977). It is akin to discretion. *See In re Marriage of Duffy*, No. 16-1446, 2017 WL 2684352, at *2 (Iowa Ct. App. June 21, 2017) ("We give the [district] court considerable discretion in awarding spousal support and will disturb its award only when the decree fails to do equity."); *In re Marriage of El Krim*, No. 16-1620, 2017 WL 2465806, at *4 (Iowa Ct. App. June 7, 2017) ("[W]e give the district court considerable discretion in awarding spousal support and will disturb an award only if we find it inequitable.'); *In re Marriage of Beauchamp*, No. 15-0107, 2016 WL 4384483, at *3 (Iowa Ct. App. Aug. 17, 2016 ("We give the district court considerable discretion in awarding spousal support and will disturb its award only when the decree fails to do equity.").

Because we afford the district court "considerable latitude" in determining spousal support, *Benson*, 545 N.W.2d at 257, there must often be more than one equitable outcome. There must often be a significant *range* of results, any of which will satisfy equity. If the district court's determination falls within that range—within that "considerable latitude"—we should not conclude there has been a "failure to do equity." *Id.* We should not choose a different result. Instead, we should defer to the district court's determination.

"This deference to the [district] court's determination is decidedly in the public interest." *Id.* "When appellate courts unduly refine these important, but often conjectural, judgment calls, they thereby foster appeals in hosts of cases, at

staggering expense to the parties wholly disproportionate to any benefit they might hope to realize." *Id.*

Applying these principles here, I think denial of spousal support was an equitable result that fell within the district court's "considerable latitude." *Id.* So I would defer to the district court's determination.

Iowa law affords no absolute right to spousal support. *See Gust*, 858 N.W.2d at 408. Rather, "any form of [spousal support] is discretionary with the court." *In re Marriage of Ask*, 551 N.W.2d 643, 645 (Iowa 1996). This is clear from the governing statute, Iowa Code section 598.21A (2017), which provides "the court *may*" award spousal support after considering several listed factors. (Emphasis added.)

Cases applying section 598.21A "have identified three kinds of support: traditional, rehabilitative, and reimbursement." *Gust*, 858 N.W.2d at 408. A fourth kind, transitional, is also recognized. *See In re Marriage of Hansen*, No. 17-0889, 2018 WL 4922992, at *16 (Iowa Ct. App. Oct. 10, 2018) (McDonald, J., concurring specially) (collecting cases).

Steven claims he is entitled to traditional support. But I believe the district court correctly rejected this claim. In *Gust*, the court noted "marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." 858 N.W.2d at 410–11. Steven and Andrea's marriage fell four years short of that "threshold." While this alone does not categorically prohibit Steven's claim, it was not wrong for the district court to find it weighed against him.

More importantly, perhaps, the record does not suggest Steven and Andrea had a "traditional" marriage. By this, I mean it does not appear the parties agreed—tacitly or explicitly—that one spouse would earn money while the other would sacrifice his or her career to stay home with children. *See, e.g.*, *id.* at 410 (noting "when the parties agree a spouse should stay home to raise children, the economic consequences of absence from the workplace can be substantial"); *In re Marriage of Arevalo*, No. 16-1326, 2017 WL 4050076, at *3 (Iowa Ct. App. Sept. 13, 2017) (finding traditional support justified in part because one spouse "spent a number of the marital years outside the workforce, as she cared for the children and the family home"). Rather, as the district court found, Steven and Andrea "shared routine care of the children." And they both participated in the workplace. They both had—and have—ample opportunity for professional achievement.

It is true that Andrea's earning capacity has grown more than Steven's. But this benefits Steven in at least two ways: (1) Andrea's earnings have greatly increased the couple's marital property; as a result, the property division has provided Steven with substantial assets he was unlikely to acquire by himself; and (2) Andrea's income reduces Steven's obligations under the child-support guidelines.

Like the district court, I believe Steven deserves no additional reward for Andrea's professional success. Her success has not been the result of any "sacrifice" by Steven. Instead, the court found, "Andrea has improved her earning capacity through her own determination." As Andrea correctly points out, equity does not require us to "penalize one party's industriousness to subsidize the other party's lack thereof."

For all of those reasons, I do not believe Steven should receive traditional support. Nor is he entitled to any other recognized form of support. For example, rehabilitative support provides support while the dependent spouse receives training or education in an effort to become self-sustaining. *See In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008). But Steven does not request an opportunity for re-education or retraining. He has not requested temporary support while he learns the bookkeeping and accounting functions of his business—a business he has pursued since age twelve. So I would decline to award rehabilitative support. *See In re Marriage of Robert*, No. 11-0876, 2012 WL 2122310, at *5–6 (Iowa Ct. App. June 13, 2012) (clarifying a party seeking support bears burden of proving his or her entitlement to support).

Reimbursement support doesn't apply, either. "Reimbursement spousal support allows the spouse receiving the support to share in the other spouse's future earnings in exchange for the receiving spouse's contributions to the source of that income." *Becker*, 756 N.W.2d at 826. Generally, this form of support is awarded when the marriage dissolves shortly after one of the parties obtains a professional degree or licensure with the financial support from the other. *See In re Marriage of Gutcher*, No. 17-0593, 2018 WL 5292082, at *3 (Iowa Ct. App. Nov. 7, 2018); *In re Marriage of Mueller*, No. 01-1742, 2002 WL 31425414, at *3 (Iowa Ct. App. Oct. 30, 2002). That did not occur here.

Finally, I would not grant transitional support. "[T]ransitional support applies where the recipient spouse may already have the capacity for self-support at the time of dissolution but needs short-term assistance in transitioning from married status to single status due to the economic and situational consequences of

dissolution." *See Hansen*, 2018 WL 4922992, at *17. But "[w]here a party does not need assistance in transitioning to single life, then transitional support is not appropriate." *Id.* Here, the district court properly concluded the record "does not demonstrate that Steven is in need of alimony." And Steven does not ask us for "short-term assistance." *See id.* So I would award none.

In short, none of the recognized forms of support applies here. Nor do I see other grounds to conclude the district court failed to do equity. So I would affirm.

## II. The district court properly handled evidence of domestic abuse.

Andrea notes that, when she filed her petition for dissolution, she sought and received an injunction "to remove Steven from the marital home and prevent his return" due to an incident of domestic abuse. Indeed, the record suggests Steven abused Andrea on multiple occassions. Andrea argues Steven's history of abuse provides additional justification for the district court's refusal to award spousal support in his favor.

Her argument deserves consideration. As one author observed, "[b]arring [spousal support] to abusers not only denies them the resources to continue their harassment; it also severs post-divorce ties between abuse victims and their tormentors, thereby providing the opportunity of a complete escape from an ongoing debilitating situation." Sarah Burkett, *Finding Fault and Making Reparations: Domestic Violence Conviction As A Limitation on Spousal Support Award*, 22 J. Contemp. Legal Issues 492, 497 (2011).

But Andrea has not cited, and I have not found, any clear authority that domestic abuse is a *permissible* consideration when determining spousal support under Iowa law. Unlike California, Iowa's spousal support statute does not

expressly mention domestic abuse. *Compare* Cal. Fam. Code § 4325 (2017) (providing for a rebuttable presumption against awarding spousal support to spouse convicted within the past five years of domestic abuse perpetrated against the other spouse), *with* Iowa Code § 598.21A(1) (listing factors for consideration when determining support and making no reference to domestic abuse).

Moreover, in *In re Marriage of Goodwin*, our supreme court held domestic abuse could not be considered when dividing marital property, a closely-related issue. 606 N.W.2d 315, 323–24 (Iowa 2000). The *Goodwin* court explained that consideration of domestic abuse "would introduce the concept of fault into a dissolution-of-marriage action, a model rejected by our legislature in 1970." *Id.* In support of its holding, the court cited its 1972 decision in *In re Marriage of Williams*, 199 N.W.2d 339, 341 (Iowa 1972). *Id.* The *Williams* court made it clear that, under Iowa's modern dissolution statute, "the 'guilty party' concept must be eliminated" and, moreover, "evidence of the conduct of the parties insofar as it tends to place fault for the marriage breakdown on either spouse must also be rejected as a factor in awarding property settlement or an allowance of alimony or support money." 199 N.W.2d at 345.

In light of *Goodwin* and *Williams*, it appears Iowa courts are not permitted to consider domestic abuse when deciding spousal support.[2] Indeed, the dissenters in *Williams* raised this very point. Justice Uhlenhopp posited a "not rare" hypothetical in which a "husband in frequent fits of rage visits violent physical

---

[2] *But cf. Goodwin*, 606 N.W.2d at 322–23 (approving district court's award of "additional assets in lieu of" spousal support "[g]iven the acrimonious relationship between the parties").

abuse on his blameless wife and children, eventually driving them from the home by his cruelty." *Id.* at 349 (Uhlenhopp, J., dissenting). He questioned: "Is the court to be allowed to know these facts along with the other equities in the case in deciding upon a fair adjustment of the parties' financial rights and obligations? Or is the court to function in a vacuum so far as the parties' conduct is concerned?" *Id.*

So I believe the district court properly handled the domestic-abuse evidence in this case. Although the court properly considered domestic abuse in connection with child custody issues, the court did not include domestic abuse in its analysis of spousal support. *See* Iowa Code § 598.41(1)(b) (noting there is a rebuttable presumption against awarding joint custody if there is a history of domestic abuse). This was the proper approach as our law stands.

**III. Conclusion.**

For the reasons explained above, I conclude the district court's denial of spousal support was not inequitable. As to that issue, I respectfully dissent. I concur in all other parts of the majority opinion.